IRA N. BRONSON v. ELIHU H. LEACH.

*Evidence—Trial—Auction sale.*

1. Testimony of an alleged conversation between the witness and plaintiff is properly admitted under the statement of plaintiff's counsel that it was in the defendant's presence, but if such

---

[1] Act No. 270, Laws of 1887, section 3.

*latter* fact is not established the testimony should be stricken from the case.

2. An official register of the arrival and departure of trains, required to be kept as a permanent record, and being the original record made by a train dispatcher, or some one in his office, as required by the railway company, from telegraphic dispatches sent by the station agents on the arrival and departure of the various trains, and entered in the register immediately upon their receipt, is competent evidence of the time of the arrival of one of said trains on a given day, when properly authenticated by the train dispatcher or some one in his office who knew of the making of the entries, or upon what authority they were made, and that they had not been tampered with. *People v. Kemp*, 76 Mich. 411 (head-note 9); *People v. Dow*, 64 Id. 717 (head-notes 3, 4).

3. A witness, asked an impeaching question upon cross-examination, and answering it in the negative, can always be supported in rebuttal if any evidence is introduced by the other side to show his answer untrue.

4. A warranty of property made by the owner prior to an auction sale, and which is not included in the posted notices containing the terms of such sale, and the only effect of which is to cause the party obtaining it to pay more than the property is worth, is not void and incapable of enforcement, as against public policy.

5. An attorney, in arguing the facts to a jury, has the right to affirm that the natural presumptions, under the circumstances of any given case, are against the testimony of any one or several witnesses. He is not bound to admit any fact because it is sworn to, and cannot be prevented by the court from arguing, in a decent and orderly way, the probabilities of the truth or falsity of any statement of any witness in a cause.

Error to Calhoun. (Buck, J., presiding.) Argued April 11, 1889. Decided April 24, 1889.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion.

*John C. Patterson,* for appellant.

*John E. Foley,* for plaintiff.

MORSE, J. This suit was commenced in justice's court.

The declaration alleged a breach of warranty upon the sale of a cow, to wit—

"That she was then soon to be delivered of a calf," and was "coming in;" would soon be a "new milch cow;" and that the said cow would be delivered of a calf on or about the last of April or first of May, 1884.

The cow was purchased March 13, 1884, at an auction sale, of the defendant, the price being $40. Plaintiff gave his note for this sum. The note was sold before due, and paid when due by plaintiff. The cow did not have a calf in April or May, and not until a year from the next fall.

Plaintiff claimed that the warranty was made the day before the auction, at the premises of defendant; that he and his wife had been that day to the village of Homer, and on their return home, about sundown, they passed defendant's place. Plaintiff got out of the buggy, and went and saw the cow, and had a talk with the defendant, in which he warranted her to be with calf, as stated in the declaration. His wife held the horses, and stayed in the buggy; but she swears that she saw Mr. Leach, and advised her husband to get out and go in and see Mr. Leach about the cow, for, if the cow was not "coming in" in the spring, they did not want her, and it would save the plaintiff from coming out to the auction next day; that the plaintiff did stop, and she saw him talking with Mr. Leach, but did not hear any of the conversation between them. The conversation between this witness and her husband was objected to, but admitted. It is claimed to have been a part of the *res gestæ*; but we do not think so. Mr. Leach was not near enough to the parties to hear any of this talk. She was permitted to state what she said to her husband, and what he said to her, about what kind of a cow they wanted; and the only object of it must have been to corroborate the

husband as to the warranty of the cow. This was not permissible.

The defendant denied being there at this time, or having any conversation on that day with plaintiff. He testified that he went to Marshall on the night of the 11th, and did not get back to Homer until it was quite dark on the evening of the 12th; stayed in Homer about half an hour, and did not reach home until about 9 o'clock P. M. A son of the defendant, W. S. Leach, testified that his father was not at home when plaintiff stopped there, and that he was the man seen by Mrs. Bronson, and who showed the cow to plaintiff; but that he had no authority to warrant the cow, and did not do so. The only thing material in Mrs. Bronson's testimony was whether or not she saw the defendant at his home that day. The balance of her testimony, consisting of talk between herself and her husband, could have no legitimate bearing upon the case, and should have been excluded. It threw no light upon the disputed issue whether Leach was there, and could only be used by the jury to prove a warranty, if used at all, for which purpose it was not available, under the well-known rules of evidence. Its admission may have done harm to the defendant, as the jury were not cautioned against so using it. The jury, upon the trial in the circuit, found a verdict of $24.80 in favor of the plaintiff, which we are asked by the writ of error to review.

There are 21 assignments of error, and most all of them are insisted upon in the argument of defendant's counsel. We shall notice only so many of them as we think entitled to discussion.

The testimony of John Powers as to his conversation with the plaintiff after the sale was properly admitted under the statement of plaintiff's counsel that it was in the presence of defendant. The evidence of Powers,

when given, however, failed to show that the talk was either in the hearing or presence of defendant, and should have been stricken from the case.

The question as to what hour the train arrived in Homer, upon which it was conceded the defendant came from Marshall to Homer on the 12th, was an important and vital one, bearing upon the fact whether or not plaintiff saw defendant at his home that day. In order to fix this time, the plaintiff introduced in evidence a register or record of the arrival and departure of trains on the Lake Shore & Michigan Southern Railway. This record was kept by the train dispatcher at Hillsdale, and made by him from telegraphic dispatches sent to him, at the time they were received by him. It is made and kept by him for future reference, and is claimed to be a complete, perfect, and authentic record of the movements of all trains on the road. The *memoranda* upon the register, the figures showing the arrival and departure of trains, were in pencil.

This testimony would have been proper if it had been duly authenticated. Morris, the station agent at Homer, in whose possession it was at the time of the trial, testified that he had no knowledge of the time when the trains arrived that day except as he obtained the same from this record. He did not make the record. He testified that it was in the handwriting of the train dispatcher, who was at Hillsdale, and that he (witness) brought it from Hillsdale to Homer. We do not think that this evidence was sufficient to admit the record. It would be difficult for the station agent to swear with any accuracy to the figures being in the handwriting of the train dispatcher. These figures, being in pencil, were liable to be altered without easy detection. The train dispatcher, or some one in the office who knew of the making of these entries, or upon what authority they

were made, and that they had not been tampered with, should have been sworn in authentication of this register. This register was a scrap-book, filled with leaves or sheets of paper, upon which entries appeared in pencil of the time when trains arrived and departed at different places on the road, on different days. There was no proof who made the entries, or whether the record was an original one or a copy. There was no showing who the train dispatcher was, or what knowledge Morris had of his handwriting; nor did it appear that it was an official register, required to be kept by the railway company.

If this record had been shown to be an official register of the arrival and departure of trains, required to be kept as a permanent record, and the original record made by the train dispatcher at Hillsdale, or some one in his office, as required by the railway company, from telegraphic dispatches sent by the station agents upon the arrival and departure of the various trains, and entered in the register immediately upon receiving the same, we think it would have been competent evidence to submit to the jury.

The plaintiff was asked, upon cross-examination, if he did not testify in justice's court that he met the defendant at his place the day the warranty was claimed, about 3 or 4 o'clock P. M. The plaintiff answered that he did not. When the defense had the case, several witnesses testified that he did so swear in the justice's court. The plaintiff, in rebuttal, offered one of the jurors, who sat at the trial before the justice, who testified that plaintiff did not give such testimony. A long argument is made here against the admissibility of this evidence in rebuttal, There can be, however, no question as to its competency. under the well-known rules of evidence. A witness, asked an impeaching question upon cross-examination, and answering it in the negative, can always be sup-

ported in rebuttal if any evidence is introduced by the other side to show his answer untrue.

Complaint is made of the argument of the plaintiff's counsel to the jury, that it was not likely that the defendant, after being at Marshall two days, and getting back to Homer at a late hour in the afternoon, would go up town and stay half an hour or so before going home, and that the presumption would be that he went directly from the depot to his home. Defendant's counsel claims that all the evidence on this point in the case was that he did go up town, several credible witnesses so testifying. An attorney, in arguing the facts to a jury, has the right to affirm that the natural presumptions, under the circumstances of any given case, are against the testimony of any one or several witnesses. He is not bound to admit any fact because it is sworn to, and cannot be prevented by the court from arguing, in a decent and orderly way, the probabilities of the truth or falsity of any statement of any witness in a cause.

The defendant's counsel requested the court to instruct the jury that if they found that while bids were being taken on this cow the defendant, when asked if he would warrant the cow to be with calf, replied that he would warrant nothing, and it was in the presence of the plaintiff, it would revoke any warranty or statement made prior thereto. This request was rightfully refused. Such a statement, in order to revoke the warranty claimed by plaintiff, must have been made in his hearing, as well as in his presence. We think the court fairly and fully submitted the question of warranty to the jury, and within the law in regard to the question whether the words used by the defendant, as testified to by the plaintiff, amounted to a warranty, or were a mere expression of opinion not equal to a promise or undertaking of warranty.

The defendant's counsel further alleges error in the refusal of the court to charge the jury that—

"The posted notices of the auction sale, and the terms of sale, as announced by the auctioneer, are binding upon the plaintiff, and if there was no warranty expressed in said notice, or announced by said auctioneer, then there was no warranty."

It is contended that this auction was a public sale, at which other bidders than the plaintiff were interested, and that honesty and good faith required that the terms of such sale should be open, and that all the bidders should stand on an equal footing; that any special agreement of warranty made with the plaintiff, secretly, without the knowledge of the other bidders, would be a fraud upon them, and therefore void, and incapable of enforcement.

There is no proof in this case of any fraud or collusion between the plaintiff and defendant against the other bidders for the advantage of either of the parties to this suit; nor is any bidder at the sale complaining; nor can it be shown that any such bidder was damaged by the warranty of plaintiff. The only effect of the warranty, as found by the jury, was that the plaintiff paid considerable more for the cow than she was worth, on account of the warranty. How this could have wronged or damaged any other bidder is difficult to be perceived. The theory of the defense in this regard would vitiate any sale at a farmers' auction, if the vendor, upon inquiry, stated before the auction any material fact as to the age, condition, or worth of the animal offered for sale, if such fact did not appear in the printed terms of sale, or was unknown to any other bidder at the sale, even if no person was damaged by such statement, and there was no fraud or collusion upon the part of the vendor and the person or persons to whom he made the statements. This

is not the law. The only person shown to have been damaged by the alleged warranty before the day of the auction was the plaintiff, and he has seen fit to affirm the sale, to keep the cow, and sue upon the warranty. Surely the defendant cannot be permitted to escape lia-bility upon his warranty upon the plea that such warranty was a fraud upon plaintiff, and therefore the whole transaction a void one. This is not a case of by-bidding at an auction, which the law declares to be against public policy, nor is it a case of employing secret puffers at such a sale.

We find no further error in the proceedings other than those heretofore noted. By reason of these the judgment of the court below must be reversed, and a new trial granted, with costs.

SHERWOOD, C. J., CHAMPLIN and CAMPBELL, JJ., concurred. LONG, J., did not sit.