Eva Cummings v. The Pennsylvania Fire Insurance Co., Appellant.

Insurance: provisions of lost policy: evidence. In this action
1 upon a lost fire insurance policy the evidence is held sufficient to take the question of whether a lightning clause was attached to the policy to the jury.

Same: secondary evidence: self-serving declarations. Where sec-

ondary evidence is resorted to it must be of the best degree obtainable. In this action upon a lost policy of insurance plaintiff contended that a lightning clause was attached to the policy and defendant offered in evidence the policy register and entries of the agent in connection therewith, which failed to disclose a lightning clause. A witness testified that the register was in the hand writing of the agent, since deceased, and if there had been a lightning clause it would have been noted on the register. *Held,* that as the entries were not verified by anyone having a knowledge of the facts recited therein they were self-serving declarations and therefore inadmissible.

**Same:** DOCUMENTARY EVIDENCE. Nor were the entries admissible under the Code as having been made in a professional capacity or in the ordinary course of professional conduct; as insurance agents are not classed as professional men, nor are their duties in these respects of a professional character, within the contemplation of the Code.

**Same:** LOSS FROM LIGHTNING: POLICY EXCEPTIONS. The provision in a policy of insurance that "if the building or any part thereof fall, except as a result of fire, all insurance by this policy on the building or its contents shall immediately cease" has reference to the falling of the building from causes other than those insured against, and does not operate to relieve liability for damages resulting from a fall of the building as the result of lightning, where the policy covers loss from lightning.

**Same:** LOSS FROM LIGHTNING: DIRECT DAMAGE. The provision of a policy covering direct loss or damage caused by lightning includes damage to goods from water and debris into which they were thrown by the fall of a building as the result of lightning.

*Appeal from Allamakee District Court.*—HON. A. N. HOBSON, Judge.

ACTION on insurance policy resulted in judgment as prayed. The defendant appeals.—*Affirmed.*

*Douglas Deremore* and *Barger & Hicks,* for appellant.

*Wm. S. Hart,* for appellee.

THURSDAY, JANUARY 11, 1912.

LADD, J.—In the afternoon of June 20, 1908, a storm of unusual violence raged at Waukon. Several inches of rain and hail fell within a half hour. The waters gathered in the depression along the course of a creek bed, through which a covered sewer had been constructed, several feet deep, and flowed rapidly past the southwest corner and west side of a brick building containing plaintiff's millinery stock and fixtures. As the hail ceased falling, the west wall of the building collapsed, and most of the property mentioned was precipitated into the water and debris. Whether this was caused by a stroke of lightning or water undermining the wall was an issue upon which the evidence was in conflict. The millinery stock and fixtures were covered by a policy issued by the defendant, and the issues were: (1) Whether a lightning clause insuring against damages caused by lightning was attached to the policy; (2) whether the wall was struck by lightning; (3) whether the injury to the insured property by debris and water was the direct consequence of the lightning; and (4) whether the policy subsequently was so canceled as to avoid liability. The evidence showed conclusively that neither the defendant's agent nor the insured had any intention of canceling the policy for the period of the term elapsed, and that the policy was merely terminated because the agent thought it advisable, as the goods were taken to another location where the premium was higher, that a new policy issue instead of transferring that then existing. The last defense mentioned then was without merit. As said, the evidence was in sharp conflict as to whether the building was struck by lightning, and we are not inclined to interfere with the verdict of the jury.

I. The loss of the policy was sufficiently explained, and there is no controversy concerning its contents, save that plaintiff claims that a lightning clause was attached thereto, while this is denied by defendant. The latter insists that the evidence was insufficient to carry this issue to

the jury and complains of the refusal of the court to re-
ceive in evidence a purported copy of the
written portion of the policy made by the
recording agent as tending to prove that
the lightning clause was not attached. The policy was
issued March 27, 1908, by being countersigned by the
recording agent of defendant, F. H. Robbins. On Monday,
the second day after the fire, plaintiff called on him for
a copy of the policy lost, and asked that it be transferred
to cover her goods in their new location. Instead, Rob-
bins issued a new policy dated June 22, 1908, for the
term of one year, at a higher rate, and delivered it to
plaintiff without explanation. She handed this to her
attorney, who, noticing the lightning clause attached, ad-
vised her that it was all right and made no further exami-
nation at that time. A few days later, upon noticing the
difference in date, he interviewed Robbins about the mat-
ter, and the latter informed him that the policy was an
exact copy of that lost, except the change in date, the
rate of premium, and the location of the goods insured;
that, as these had to be changed, he had thought it as well
to issue a new policy, and had done so without intention
of canceling that previously issued. Subsequently Robbins
informed Murphy that the company had demanded that
the lightning clause be detached and was permitted to do
so upon giving a receipt therefor. The plaintiff had not
noticed whether the lightning clause was attached to the
policy lost, but testified that some seventeen or eighteen
years previous she had applied to Robbins for a policy
insuring her goods against fire and lightning and received
such a policy, issued by defendant, and that each year
upon the expiration of the existing policy in the defend-
ant company the agent had handed her a policy as a
renewal of that which had expired. Presumably each re-
newal was in terms and on conditions of the policy re-
newed. *Thomason v. Ins. Co.,* 92 Iowa, 72; see, also,

1 INSURANCE: provisions of lost policy: evidence.

*Taylor v. Ins. Co.,* 98 Iowa, 521; *McLaughlin v. Ins. Co.,* 126 Iowa, 149. The evidence was sufficient to carry the issue to the jury.

II. The main contention of appellant is that the court erred: (1) In receiving the evidence of Murphy and plaintiff, for that it was not the best evidence available,

2 Same: secondary evidence: self-serving declarations.

it appearing that Robbins, as defendant's recording agent, kept a register containing a copy of all policies, including that lost, in his office; and (2) in refusing to receive such register ·so showing in evidence. Mrs. Eddy, who succeeded her father, F. H. Robbins, who died before the trial, as defendant's agent at Waukon, testified that in issuing a policy, a daily report is first made out to be sent to the company, and an exact copy thereof entered into the policy register, and then the policy prepared; that in the register and daily report a description of the property, the amount for which insured, the date and the premium, and the rate are noted, and, if a lightning or gasoline clause is attached to the policy, this is indicated in the policy register, and, if any change is made subsequently, this is also noted in the register and the company notified. The daily report is mailed to the company and the register retained by the agent. She testified this was as her father had taught her, and that, so far as she knew, his policy register was kept in the same way and the entries made at about the time of the transactions and were in accordance with what he did with the different risks, and, upon being shown what purported to be the register entry concerning the lost policy and of each preceding policy issued to plaintiff by defendant during the ten years previous, she said these were in the handwriting of her father. The several entries were then offered in evidence, including that of the lost policy, which, as apparently made when the policy was issued, may be set out:

Policy No. 384; name, Miss Eva Cummins; Commencement of risk, Mch. 27, 1908; expiration of risk, Mch. 27, 1909; amount insured, $1,100.00; rate, 1.32; Prem. $14.52. $950.00 on her stock of millinery goods, ladies furnishing goods, ribbons, trimmings, fancy goods and such other goods as are usually kept for sale by dealers in that branch of business, and $150.00 on her show cases, mirrors, carpets, rugs, stands, tables, racks, desks, chairs, stools, millinery holders, millinery tools and appliances, stoves, pipe and fuel, all while contained in the first story and in cellar of the two story brick composition roof building known on Sanborn map of Waukon, Iowa, as number 206, block 1, sheet 2. Other short time insurance permitted on stock in spring and fall, but in no case to exceed three fourths (3/4) of value at time of writing. Company's gasoline stove permit attached to policy.

On objection, the entries were excluded.

It may be conceded that, even though plaintiff can resort to secondary evidence to prove the lightning clause was attached to the policy, this must be the best attainable. Though the rule seems to be laid down broadly in England that there are no degrees in secondary evidence, the current of authority is otherwise in this country. *Harvey v. Thorpe,* 28 Ala. 250, 260 (65 Am. Dec. 344); *Cornett v. Williams,* 20 Wall. 226, 246, (22 L. Ed. 254); *Wilson v. South Park Commissioners,* 70 Ill. 46. And this court seems to be committed to the American doctrine. *Conger v. Converse,* 9 Iowa, 554; *Higgins v. Reed,* 8 Iowa, 298; *Zalesky v. Ins. Co.,* 102 Iowa, 512. But the question does not arise in this case for the reason that the entries offered were not admissible at all. They were mere memoranda made by the agent of the company, and not verified by any one knowing the facts recited therein. Quite generally such private entries are excluded whether made by a party to the controversy, or his agent, as in the nature of self-serving declarations. *Taylor v. Ry.,* 80 Iowa, 431; *Lyman v. Bechtel,* 55 Iowa, 437; *Hoffman v. Ry. Co.,* 40 Minn. 60, (41 N. W. 301); *Kellogg v. Webster,* 140 Wis. 341,

(122 N. W. 737) ; *Connor v. Ry.,* 56 Wash. 310 (105 Pac. 634, 25 L. R. A. (N. S.) 930, 134 Am. St. Rep. 1110) ; *Strauss v. Insurance Co.,* 9 Colo. App. 386, (48 Pac. 822) ; *Railway Co. v. Allison,* 115 Ga. 635, (42 S. E. 15) ; *Newhall v. Appleton,* 102 N. Y. 133, (6 N. E. 120). And in the absence of statute the rule is not otherwise where the person making the memoranda has since died. *Luke v. Koenen,* 120 Iowa, 103; *Kellogg v. Webster, supra; Avery v. Avery,* 49 Ala. 193. Numerous decisions hold that memoranda or entries of many items which are verified by a witness having knowledge thereof may be received in evidence, not as evidence apart from the oral testimony, but in connection therewith as memoranda made at the time and verified as correct. *State v. Brady,* 100 Iowa, 195; *Curtis v. Bradley,* 65 Conn. 99, (31 Atl. 591, 28 L. R. A. 143, 48 Am. St. Rep. 177). Of course, there are exceptions as the admissibility of entries of notaries and bank officials in matters of protest, presentation, and the like of negotiable instruments. *Nicholls v. Webb,* 8 Wheat. 326, (5 L. Ed. 628) ; *Welsh v. Barrett,* 15 Mass. 380. And possibly of the record of the movement of trains made by a train dispatcher. *Donovan v. Ry.,* 158 Mass. 450, (33 N. E. 583). But some courts hold that even train sheets, to be admissible, must be verified by witnesses having knowledge of the facts. *Bronson v. Leach,* 74 Mich. 713, (42 N. W. 174); *Pittsburg Co. v. Noel,* 77 Ind. 110; *Railroad v. Cunnington,* 39 Ohio St. 327. And some cases are quoted and relied upon by appellant where memoranda made by some one not connected with or interested in the controversy are held admissible.

It is enough to say that the memoranda in question are not within any of these classes, and, if admissible at all, this is by virtue of section 4622 of the

3 SAME: documentary evidence.

Code, which provides that: "The entries and other writings of a person deceased, who was in a position to know the facts therein stated,

made at or near the time of the transaction, are presumptive evidence of such facts, when the entry was made against the interest of the person so making it, or when made in a professional capacity or in the ordinary course of professional conduct, or when made in the performance of a duty especially enjoined by law." The contention of appellant is that the entries were either made in a "professional capacity," or in the ordinary course of "professional conduct." If so, then a recording agent of a fire insurance company must be regarded as a professional man. He is an employee of the insurer and not of the insured, and all exacted of him is that he act with fidelity in negotiating as the representative of his principal with those desiring to obtain insurance on their property. Undoubtedly such agency is an occupation or vocation, but we do not regard it professional in any sense. Indeed, insurance has been construed to be a commodity, *Beechley v. Mulville*, 102 Iowa, 602, though issuing a policy is said not to be a transaction in interstate commerce, *Hooper v. California*, 155 U. S. 648, (15 Sup. Ct. 207, 39 L. Ed. 297). A policy of insurance is merely a contract to indemnify against loss by fire entered into between the insurer and the insured for a consideration; the policy coming to the recording agent in printed form. His duties are to fill out the blanks, countersign and report to the company what he has done, and make memoranda thereof in his register. Aside from this, he may solicit business and examine the property to be insured. But all this requires no special skill or learning and is in no sense professional within the accepted meaning of that word. "Professional" is that which pertains to a profession, and Webster's New International Dictionary defines "profession" as "that of which one professes knowledge; the occupation if not purely commercial, mechanical, agricultural, or the like to which one devotes oneself; a calling in which one professes to have acquired some special knowledge used by way either

of instructing, guiding or advising others or of serving them in some art; calling; vocation; employment; as, the profession of arms; the profession of chemist." The Standard Dictionary: "An occupation that properly involves a liberal education or its equivalent and mental rather than manual labor; especially one of the three learned professions. (2) Hence, any calling or occupation involving special mental and other attainments or special discipline, as editing, acting, engineering, authorship." The Century Dictionary: "The calling or occupation which one professes to understand and to follow; vocation; specifically, a vocation in which a professed knowledge of some department of science or learning is used by its practical application to affairs of others, either in advising, guiding, or teaching them, or in serving their interests or welfare in the practice of an art founded on it. Formerly theology, law and medicine were specifically known as the professions; but, as the applications of science and learning are extended to other departments of affairs, other vocations also receive the name. The word implies professed attainments in special knowledge, as distinguished from mere skill; a practical dealing with affairs, as distinguished from mere study or investigation; and an application of such knowledge to uses for others as a vocation, as distinguished from its pursuit for one's own purposes."

It is apparent from these definitions that, to constitute a profession, something more than a mere employment or vocation is essential; the employment or vocation must be such as exacts the use or application of special learning or attainments of some kind, and this seems to be the conclusion of the courts. Thus a chemist is a person belonging to a recognized profession. *United State v. Laws,* 163 U. S. 258, (16 Sup. Ct. 998, 41 L. Ed. 151). So is a consulting engineer. *Ericsson v. Brown,* 38 Barb. (N. Y.) 390. See *Commissioner v. Reynolds,* 7 Watts & S. (Pa.)

329. A building contractor is not. *In re Whetmore,* 29 Fed. Cas. 921. Nor is a milliner a "professional artist" within the act of Congress prohibiting the immigration of aliens under contract to perform labor. *United States v. Thompson,* (C. C.) 41 Fed. 28. One who operates a real estate agency is not engaged in a professional employment. *Pennock v. Fuller,* 41 Mich. 153, (2 N. W. 176, 32 Am. Rep. 148), where the court said: "Professional employment can only relate to some of those occupations universally classed as professions, the general duties and character of which courts must be expected to understand judicially. Real estate agencies are no more professions than any other business agencies. A commission merchant, or an agent for the sale of any particular kind of personal property, acts in an analogous capacity. Any one can assume and lay down such business at pleasure, and any one can conduct it in his own way, on such terms and conditions as he sees fit to adopt. There is nothing in our laws which would enable any court to draw a line between such business agencies. They are not classed as professions by popular usage or by law." Nor is a sewing machine agent so engaged. *People v. McAllister,* 19 Mich. 215. The renting of tolls is not a profession or trade. *Bellanmy v. Burch,* 16 Mees & W. 590. Debts due for board to a hotel keeper are not professional earnings. *Youst v. Willis,* 5 Okla. 170, (49 Pac. 56). See *Roth v. Boies,* 139 Iowa, 253; *Commonwealth v. Fitler,* 147 Pa. 288, (23 Atl. 568, 15 L. R. A. 205). In *State v. Hunt,* 129 N. C. 686, (40 S. E. 216, 85 Am. St. Rep. 758), Douglass, J., expressed the opinion that procuring laborers to accept employment in another state by an emigrant agent is a profession; but this does not seem to have been essential to the decision, and the other judges expressed no opinion on the point. In *Betz v. Maier,* 12 Texas Civ. App. 219, (33 S. W. 710), the Texas Court of Civil Appeals held that, within the exemption laws, an insurance agent should be regarded

as engaged in a trade, but expressed no opinion as to whether he should be regarded as engaged in a profession. Fire insurance agents are not spoken of, in common parlance, as professional men, nor is their work to be classed as professional. It follows that the memoranda in the policy register can not be said to have been made in a professional capacity nor in the course of professional conduct.

In *Commonwealth v. Smith,* 151 Mass. 491, (24 N. E. 677), the court merely held that the memoranda in the policy register, supplemented by oral testimony of the agent, was admissible notwithstanding the existence of other evidence alleged to be of better quality. The ruling in *Roberts v. Rice,* 69 N. H. 472, (45 Atl. 237), was on the theory that the entries in the policy register were made by a third person since deceased. An insurance company necessarily acts through agents, and here the action is between the original parties, one of whom is the plaintiff and the other the company for whom the agent acted in the very matters in controversy. Clearly enough, such entries were in the nature of self-serving declarations, and, when not verified by a witness knowing the facts, were not admissible in evidence.

III. The policy to which the lightning clause was attached stipulated that: "If a building or any part thereof fall, except as the result of fire, all insurance by this policy on such building or its contents shall immediately cease." Counsel contend that, as the lightning clause is subject to the terms and conditions of the policy, defendant is not liable, for that the injury occurred after the walls fell. The evident design of that clause was to obviate liability for loss by fire consequent upon or subsequent to the falling of the building insured, and we are referred to several cases deciding that in that event there is no liability under such a policy. *Foster v. Ins. Co.,* 143 Fed. 307, (74 C. C. A. 445); *Kiesel v. Ins. Co.,* 88 Fed. 243, (31 C. C. A. 515);

4 SAME: loss from lightning: policy exceptions.

Nelson v. Ins. Co., 181 N. Y. 472, (74 N. E. 421). Possibly all insurance under the lightning clause except as a result of lightning would have ceased upon the falling of the building, and this would seem a fair interpretation of the two clauses read together. Surely, it could not have been intended in stipulating indemnity for loss by lightning and at the same time to eliminate the natural consequences of a stroke of lightning. The clause quoted has reference to the falling of a building consequent of causes other than those insured against, and the lightning clause is subject to the condition as so construed. See *Haws v. Ins. Ass'n,* 114 Pa. 431 (7 Atl. 159). Moreover, the walls in falling, precipitated the goods of insured in the water and debris, and no time appears to have elapsed between the falling of the wall and the injury upon which the claim of damages is predicated. In any event, then, the damages are within the terms of the contract.

IV. If a lightning clause were attached to the policy covering plaintiff's goods, it is conceded to have been in words following: "This policy shall cover any direct loss or damage caused by the lightning (meaning thereby the commonly accepted use of the term lightning, and in no case to include loss or damage by cyclone, tornado or windstorm), not exceeding the sum insured, nor the interest of the insured in the property, and subject in all other respects to the terms and conditions of this policy." Appellant contends that, even though the wall was struck by lightning and by its fall the goods were precipitated into the debris and water, the damage from these was not the "direct loss or damage caused by lightning," relying upon several cases, none of which, as we think, support the contention. In *Warmcastle v. Insurance Co.,* 201 Pa. 302, (50 Atl. 941), the policy assumed liability for "direct loss from lightning in no case to include loss or damage by cyclone, tornado,

5 SAME: loss from lightning: direct damage.

or windstorm," and the court recognized that, "as a general principle, the insurer is liable for all loss which results from or can be fairly attributed to the peril insured against," but proceeded to say that liability might be limited, and in that case liability for damage caused by cyclone, tornado and windstorm was expressly excluded, and, though it might be difficult to say the amount of damages occasioned by the wind, plaintiff could only recover for that occasioned by lightning. In *Ins. Co. v. Nelson*, 64 Kan. 115, (67 Pac. 440), the policy stipulated for indemnity against "all such immediate loss or damage sustained by the injured as may occur by tornadoes, cyclones and windstorms," and provided that the insurer should not be liable for any loss or damage occasioned by hail and water. Windows were broken by hail, and damages were denied because of the exception noted. See, also, *Beakes v. Ins. Co.*, 143 N. Y. 402, (38 N. E. 453, 26 L. R. A. 267); *German Fire Ins. Co. v. Roost*, 55 Ohio St. 581, (45 N. E. 1097, 36 L. R. A. 236, 60 Am. St. Rep. 711); *Vorse v. Ins. Co.*, 119 Iowa, 555. It will be observed that the decisions turn on an exception contained in the policies which may have found its way there because of the conclusion in *Spensley v. Ins. Co.*, 54 Wis. 493, (11 N. W. 894), holding that, in the absence of any exceptions, where injury is caused by windstorm or cyclone accompanied by lightning, the issue of whether the electric storm is the cause of the injury to property covered by a lightning clause attached *to* the insurance policy was for the jury. No argument would seem to be necessary in this case to demonstrate that no efficient cause intervened between the stroke of lightning and the damage to the goods from coming in contact with the debris and water of the flood. Certainly it might have been found that the fall of the building was caused by the stroke of lightning, and as a natural sequence that the goods were precipitated in the water and debris. Courts have held that the fall of

a building directly resulting from an ordinary fire is within the terms of the policy against fire, *Ermentrout v. Ins. Co.*, 63 Minn. 305, (65 N. W. 635, 30 L. R. A. 346, 56 Am. St. Rep. 481); and that injury to another building from the fall of one burned, may be within the policy covering the former, *Russell v. Ins. Co.*, 100 Minn. 538, (111 N. W. 400, 10 L. R. A. [N. S.] 326); and that injury resulting from water or chemicals in extinguishing the fire is a direct result of the fire and covered by the policy. *Geisek v. Ins. Co.*, 19 La. Ann. 297; *Lewis v. Ins. Co.*, 10 Gray (Mass.) 159; *Whitehurst v. Ins. Co.*, 51 N. C. 352; *Cohn v. Ins. Co.*, 96 Mo. App. 315, (70 S. W. 259). Loss by theft consequent upon the confusion attending a fire or injury to goods in their removal from the building is regarded as a direct consequence of the fire. *Newark v. Ins. Co.*, 30 Mo. 160, (77 Am. Dec. 608); Mitchell v. *Ins. Co.*, 49 Me. 200. In *Hapeman v. Ins. Co.*, 126 Mich. 191, (85 N. W. 454, 86 Am. St. Rep. 535), horses, insured against lightning, were in a barn which was struck by lightning and were burned by the fire which followed, and the insurer was held liable. In the light of these decisions, it seems unnecessary to add that the injury to the goods from water and debris into which they were precipitated by the falling of the wall, was the direct and natural consequence of the stroke of lightning. The judgment is *affirmed*.