Sam Kushner, Harry Robert Bluestein and Michigan Shore Building Company, Appellees, v. Samuel T. Lawton et al., Defendants. On Appeal of 1400 Lake Shore Drive Corporation, City of Chicago et al., Appellants.

Gen. No. 46,090.

Opin-
ion filed October 26, 1953. Released for publication December 1, 1953.

CHARLES E. McGUIRE, of Chicago, for appellants.

SONNENSCHEIN, BERKSON, LAUTMANN, LEVINSON &
MORSE, of Chicago, for appellees; JOHN J. FAISSLER,
and ROBERT I. LOGAN, both of Chicago, of counsel.

MR. PRESIDING JUSTICE NIEMEYER delivered the opin-
ion of the court.

Certain owners of property improved by apartment
buildings in an apartment-house district in Chicago,
and members of the Zoning Board of Appeals of said
city, appeal from an order reversing a decision of the
Board of Appeals and directing and ordering the

Building Commissioner of the City of Chicago to forthwith issue a license for the operation of a retail shop for the sale of foods and drug sundries in the 1350–1360 Lake Shore Drive Building owned by the Michigan Shore Building Company.

Under the zoning ordinance of the City of Chicago, permitted uses in apartment-house districts include any use permitted in a family-residence district, a duplex-residence or group-house district; apartment house, boarding or lodging house, hotel, hospital, home for dependents or nursing home; public art gallery, library or museum; a boarding school, vocational school, college or university, club, fraternity or sorority house, when not operated for profit, and auxiliary uses defined in the ordinance as uses customarily incidental and accessory to the permitted use of a land area. The application of plaintiffs Kushner and Bluestein for a food purveyor's license for the operation of a retail food store in the 1350–1360 Lake Shore Drive Building was rejected by the Chicago building commissioner on the sole ground that the operation of retail stores for the sale of food and drugs in an apartment building in a apartment-house district was a violation of the zoning ordinance and not an auxiliary use within the terms of the ordinance. The owner of the building joined with Kushner and Bluestein in an appeal to the zoning board of appeals. The board of appeals sustained the action of the building commissioner. Suit was brought for a review of this action, resulting in an order of the trial court that the building commissioner refused the requested license on the sole ground that the use of the designated space in the Lake Shore Drive Building would not conform with the requirements of the zoning ordinance; that the building is in a district zoned for apartment-house use, expressly including as an auxiliary use all uses customarily incidental and

accessory to the operation of such apartment building; that the proposed commissary shop to be operated in the apartment building is a lawful and proper auxiliary use of the property; that the board of appeals erred in failing to sustain the appeal from the action of the commissioner of buildings. The decision of the zoning board of appeals was reversed and the building commissioner directed to issue the license sought by the plaintiffs Kushner and Bluestein.

The Lake Shore Building contains 740 apartments in which about 2,000 persons live as tenants. Each living unit has a bath and kitchen and the building has a large garage, receiving rooms, two lobbies, management office and other facilities similar to those found in very large residential structures. It was built in 1951 and is the largest apartment building in Chicago. The owner proposed to lease an area on the ground floor off the south lobby of the building about 30 by 30 feet for the operation of a commissary or food shop, selling foods at retail to the tenants of the building. This area is entirely inside the building, without windows or doors on the street. It can only be reached through the south lobby and cannot be seen from the street. No sign is to be placed on the street. The lease to Kushner and Bluestein requires that their sales be limited to tenants in the building and forbids any advertising outside the premises. The principal appellant, 1400 Lake Shore Drive Corporation, is directly across the street, north of the 1350–1360 Lake Shore Drive Building. It was built prior to 1930, contains 360 apartments and operates in the building a commissary, restaurant, drugstore and beauty shop for its tenants. The 1350–1360 Lake Shore Drive Building is $4\frac{1}{2}$ blocks from the closest retail shopping area. The building has package-receiving rooms and delivery service. An average of 400 to 500 daily package deliv-

eries are made to tenants, including approximately 175 food deliveries in a typical day.

Appellants contend that under the original zoning ordinance of 1923 and various amendments thereto, to and including the year 1935, "the city council has made it clear by special language that under no circumstances was a grocery store to be permitted as an auxiliary use in an apártment building in an apartment house district"; that the general revision of the ordinance in 1940 in which auxiliary use was defined as hereinabove stated, does not broaden or enlarge the auxiliary uses permitted in an apartment building in an apartment-house district; that for a use to be "customarily incidental" the percentage of occurrence should greatly exceed 50 per cent or more. No authorities are cited in support of appellants' contentions. Evidence was offered as to the accommodations in the way of food stores, restaurants, valet shops, etc., in apartment buildings in Chicago ranging in size from 37 apartments to the 740 apartments in the building involved herein. There was also evidence as to such accommodations in large apartment buildings in various cities throughout the United States. Although food shops were maintained in some of the apartment buildings in evidence, such food shops are in considerably less than 50 per cent of the buildings. Plaintiffs cite cases in which auxiliary use in reference to family residences was under consideration. In none of them was the determination of an auxiliary use made dependent upon the number of such facilities in use. In *Thomas v. Zoning Board of Adjustment,* 241 S. W. (2d) (Tex. Civ. App., 1951) 955, 957–958, a swimming pool in connection with a family residence was held to be an auxiliary use. In *Kenney v. Building Commissioner of Melrose,* 315 Mass. 291, cited in the preceding case, a conservatory attached to a garage in the rear

of a dwelling house for the cultivation of plants for the personal use of the owner of the premises was held to be an auxiliary use within a definition of that phrase as "Accessory purposes such as are proper and usual with residences . . . ." In *Village of St. Louis Park v. Casey,* 218 Minn. 394, *Appeal of Lord,* 368 Pa. 121, and *Wright v. Vogt,* 7 N. J. 1, 80 A. (2d) 108, the construction of radio antennae on single family-residence lots was held to be an auxiliary use. The need of a food shop in an apartment building housing almost 2,000 tenants, more than four blocks from a shopping district, would appear to be an absolute necessity as well as something "customarily incidental and accessory to the permitted use" of the land area. The shop, being confined to the interior of the building, with neither windows, doors nor advertising on the street and with patronage limited almost exclusively to the tenants of the building, cannot be injurious to the district from a health, moral or aesthetic standpoint. The refusal of the license was without proper cause.

The order appealed from is affirmed.

*Order affirmed.*

BURKE and FRIEND, JJ., concur.