THE COUNTY OF LAKE, Plaintiff-Appellee, *v.* LA SALLE NATIONAL BANK *et al.*, Defendants-Appellants.

Second District   No. 78-585

Opinion filed September 21, 1979.

Murray R. Conzelman, of Conzelman, Schultz, Snarski & Mullen, of Waukegan, for appellants.

Dennis P. Ryan, State's Attorney, of Waukegan (James C. Hauser, Assistant State's Attorney, of counsel), for appellee.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

Plaintiff, the County of Lake, sought an injunction against defendants La Salle National Bank, Herman Builders, Inc., and Herman L. Schwinge, owners and operators of a Lake County golf course, to force removal of a house trailer maintained on the course as sleeping quarters for four summer groundskeepers. The trial court entered an injunction as prayed for by plaintiff and defendants appeal.

Defendants own 150 acres in an unincorporated section of Lake County on which they operate a public fee golf course pursuant to a conditional use permit authorizing that use. The underlying zoning of the property is agricultural (AG). There are several buildings on the property, including two residences, a barn and the house trailer at issue herein. The trailer, which has been maintained for 10 years, is used from April 1 to November 1 of each year as sleeping quarters for four groundskeepers who come up from Texas each summer to maintain the golf course. The trailer is not used at all from November 1 to April 1. The men merely sleep in the trailer, they do not eat there. They have shower and sanitary facilities in another building.

■■ The trial court granted the injunction because it found that the use of the house trailer was "neither a permitted principal use nor a permitted accessory use under the Lake County zoning ordinance." Defendants

raise two arguments in the alternative on appeal. Their first contention is that the maintenance of this trailer on the golf course is not prohibited by the Lake County zoning ordinance. Defendants argue that the ordinance regulates only principal uses ("the specific primary purpose for which land is used"), and that, therefore, they may maintain a trailer on their property so long as the property's principal use remains that of a golf course. This argument is without merit. Taking defendants' argument to its logical conclusion, defendants would be allowed to maintain any sort of structure on the property so long as the principal use of the land was for a golf course. Such a construction of the ordinance would be at variance with its stated purpose of creating "a series of zones * * * as are necessary to achieve compatibility of uses within each zone * * *." (Ordinance, art. 3, §I, at 14.) It also overlooks the fact that the ordinance does not confine itself only to principal uses but addresses itself to a number of miscellaneous uses and also to accessory uses. The section of the ordinance concerning accessory uses (art. 4, §VI A) provides that:

> "The uses of land, buildings, and other structures permitted in each of the zones established by this Ordinance are designated by listing the principal uses permitted in Table 1. No accessory use shall be permitted without a principal use. *It is the intent of this Section to regulate uses customarily incidental to any principal use permitted in the zone.*" (Emphasis added.)

In effect, then, the county zoning scheme is structured around the regulation of principal uses with those uses customarily incidental to any permitted principal use being regulated as accessory uses. Thus, the house trailer in question, even though not a principal use, can be regulated as an accessory use.

Defendants' second contention is that the trailer in question is a permitted accessory use within the meaning of the ordinance. The dispute between the parties on this accessory issue centers on one particular requirement of those set out in article 4, section VI A of the ordinance, namely the requirement that an accessory use "shall be customarily incidental to the principal use established on the same lot, and shall serve no other principal use or purpose." According to this section, in order to qualify as an accessory use under the Lake County ordinance, the instant trailer must be shown to be "customarily incidental" to the operation of the golf course. Neither the ordinance itself nor the Illinois cases provide any clear definition of what is "customarily incidental." In *Village of Riverside v. Kuhne* (1948), 335 Ill. App. 547, 82 N.E.2d 500, the court concluded that use of property for real estate business with advertising signs inviting customers to enter, was not customarily incidental to use of property for residential purposes but no definition of "customarily incidental" was provided. In *Samsa v. Heck* (1967), 13 Ohio App. 2d 94,

234 N.E.2d 312, the Ohio appellate court defined "incidental" as anything usually connected with the principal use, something which is necessary, appertaining to or depending upon the principal use. "Customary" is defined in dictionary terms: agreeing with custom, commonly practiced, used or observed or established by common usage.

Applying the definition referred to above, there is little doubt that use of a trailer for groundskeeper's sleeping quarters is incidental to the operation of the golf course. It is something which is necessary, appertaining to, or depending upon the principal use. However, the requirement of the ordinance at issue is not merely that the accessory use be incidental but that it be *customarily* incidental. This additional requirement distinguishes the case of *City of Rockford v. Eisenstein* (1965), 63 Ill. App. 2d 128, 211 N.E.2d 130, cited by defendants, which defined accessory uses in terms of uses incidental to the principal use rather than customarily incidental.

Like "incidental," "customarily" has no specialized legal meaning. Webster's Dictionary defines it simply as "according to custom; usually." Other states have discussed customarily in more detail.

" 'No doubt the degree of use is a factor. * * * The practice should be sufficient to justify the observation that (it) is not unique or rare. It should be appreciable or perhaps substantial. It should be sufficient to constitute a recognized mode of activity in the field, but it need not be the more prevalent one.' " (*State v. Smiley* (1967), 182 Neb. 211, 214, 153 N.W.2d 906, 908. See also, *Lawrence v. Zoning Board of Appeals* (1969), 158 Conn. 509, 264 A. 2d 552.)

Thus, it is highly relevant to our inquiry whether house trailers or other structures are used to house groundskeepers at other golf courses. We note that a practice need not be common to all like principal uses, in this case all golf courses, for it to be customarily incidental. Nor does it need to be common to most or even to a large minority of courses. We are loath to set forth any wooden tests as to what percentage of golf courses must use trailers to house groundskeepers in order for it to meet this requirement. We simply state that it merely needs to be common enough so that it can be said to be a known and accepted incidental use.

Defendants introduced both testimony and photographic evidence that there were trailers on three other golf courses in the Lake County area. One was decorated and could be lived in; another was lighted at night and had people inside it. Herman Schwinge, one of the defendants, testified that he knew three mobile homes were used to house groundskeepers at a golf course in another county. Plaintiff called Thomas Cameron, a building inspector for Lake County, who testified that he had inspected all 13 golf courses in the unincorporated area of Lake County to

see if they were using mobile homes to house groundskeepers. He found no house trailers being used at these 13 golf courses. Mr. Cameron also covered seven golf courses in the incorporated areas of Lake County at which he found two house trailers, neither of which were being used to house groundskeepers. Defendant also called Clarence Watson, the general manager of a local country club active in the country club managers professional associations, who testified that he knew of only one house trailer located on the premises of a golf course and that that had been used as a temporary tennis shop.

Although, when viewed in isolation, plaintiff's witnesses' testimony seems convincing on the issue of whether house trailers are customarily incidental to golf courses, defendants' photographs of house trailers not found by plaintiff's witnesses seriously call into question the adequacy of plaintiff's witnesses' inspection of all of the golf courses.

■ Recently, in *County of Lake v. First National Bank* (1979), 68 Ill. App. 3d 693, 386 N.E.2d 394, we noted that since zoning ordinances are in derogation of the common law rights of the use of real property, such ordinances should be construed in favor of the right of a property owner to the unrestricted use of his land. Given this rule, the fact that the house trailer in question is clearly incidental to the principal use of the property, and that defendants made some showing that the use of such trailers was customary, we conclude that maintenance of a house trailer on defendants' golf course as sleeping quarters for groundskeepers qualifies as a valid accessory use under the Lake County zoning ordinance.

Moreover, there is some question as to whether the house trailer should be viewed in terms of the underlying agricultural zoning of the property rather than only in terms of its use as a golf course. It is by no means clear that the special use permit to operate a golf course on the land limits the rights of the defendants to use the land in accordance with its underlying agricultural zoning. Use of mobile homes or other structures to house seasonal agricultural workers on farmland may well be more customarily incidental than the use of such housing on golf courses, but, because of our ruling that the trailer was a proper use on the golf course, we need not rule on this question, and will not do so.

For the foregoing reasons, the ruling of the circuit court is hereby reversed.

Reversed.

WOODWARD and LINDBERG, JJ., concur.