TOLLWAY NORTH OFFICE CENTER CENTRAL NATIONAL BANK IN CHICAGO, Trustee, Plaintiff-Appellant, *v.* ROBERT STREICHER *et al.,* Defendants-Appellees.—(DEERFIELD RESTAURANT COMPLEX, INC., Plaintiff-Appellee, *v.* LAKE COUNTY LIQUOR CONTROL COMMISSION *et al.,* Defendants-Appellants.)

Second District   Nos. 79-152, 79-299 cons.

Opinion filed April 23, 1980.

Donald T. Morrison, of Morrison & Nemanich, of Waukegan, for appellants.

Dennis P. Ryan, State's Attorney, of Waukegan (Gary Neddenriep, Assistant State's Attorney, of counsel), for appellees.

Mr. JUSTICE LINDBERG delivered the opinion of the court:

In No. 79-152, Tollway North Office Center v. Streicher (hereinafter zoning case), plaintiff appeals from an order of the Circuit Court of Lake County upholding on administrative review decisions of defendant, Robert Streicher, the Lake County zoning officer, and of the Lake County zoning board of appeals (hereinafter defendants), that an employees' restaurant serving liquor and operating on a for-profit basis was not a permitted accessory use under the county zoning ordinance in an Office Research (O-R) zone. In No. 79-299, Deerfield Restaurant Complex, Inc. v. Lake County Liquor Control Commission (hereinafter mandamus action), defendants Lake County liquor control commission and its former chairman, Harry G. Robin, appeal from a writ of mandamus issued by the Circuit Court of Lake County compelling them to issue plaintiff, Deerfield Restaurant Complex, a liquor license. These two cases, which were heard separately below, have been consolidated on appeal.

## FACTS

### A. Zoning Case

Tollway North Office Center (hereinafter Tollway North) is a complex of office buildings located in an unincorporated area of Lake County zoned O-R. The office complex has approximately 80 tenants and some 2,000 people are employed by these tenants. The controversy that eventually led to this appeal began when the complex's management decided to provide a food service facility. It was to be privately owned and would include both a self-service serving area and a full-service sitdown area with a small bar. Application was then made for a liquor license. The liquor commission forwarded a routine request to the county zoning officer for verification that the proposed use was permitted under

the county zoning ordinance. The zoning officer responded that the use was not permitted in an O-R zone.

Tollway North appealed the zoning officer's decision to the zoning board of appeals. At a hearing before this board, a managing partner of Tollway North described the office center. He also testified that Walgreen's, Baxter Laboratories and Abbott Laboratories, all of which were zoned O-R under the Lake County Zoning Ordinance, had dining facilities for their employees. He further testified the Allstate Office Complex in Cook County had dining facilities complete with a full-service area serving alcoholic beverages. Finally he testified that the proposed facility would be strictly limited to use by tenants, their employees and guests. The president of the proposed food service also testified as to its intended use.

The county zoning officer testified that he would have permitted an "employee's cafeteria" similar to those at Baxter and Walgreens. The proposed use was denied because it was owned by someone other than user and because it was to serve liquor. The deputy director of the zoning office testified that there were no similar type employee food service operations in Lake County.

After this first hearing was concluded, the county sought another hearing to present further evidence concerning the operation of food services at other office complexes. This request for a second hearing was granted. A representative of Abbott Laboratories testified that Abbott had two cafeterias and no full-service area. Alcohol was not served, and the company subsidizes the cost of each meal. A representative of Baxter-Travenol testified that his company had a self-service food facility at both its office complexes and a full-service dining room at its Deerfield Complex. There is also a full-service executive dining room. He denied that alcohol is sold at these facilities, but stated that it is given away on occasion. Finally, while these food services are catered by Marriott Corporation, Baxter subsidizes the cost of the meals. A representative of Walgreens testified that his company provides food service in the form of a self-service operation only, that no liquor is served, and that the company provides this service itself. A managing partner of Tollway North testified that one of its tenants had been granted a permit for use of a food service facility consisting of a cafeteria and a full-service executive dining room. This facility was said to be limited to employees of the tenant and to be operated by an independent caterer. This facility was subsidized to the extent that the rental for the space was provided by the tenant. Finally this representative of Tollway North testified that its proposed food service facility would be subsidized to the extent of $300 per day in rent reduction below financing cost.

After hearing the above testimony and the arguments of counsel, the zoning board of appeals made findings of fact and decided to uphold the decision of the zoning officer. Tollway North then sought administrative review in the Circuit Court of Lake County. (Ill. Rev. Stat. 1977, ch. 110, pars. 264-279.) The circuit court upheld the board's decision finding that it was supported by substantial competent evidence. Tollway North filed a timely notice of appeal.

### D. Mandamus Action

Subsequent to the circuit court's affirmance of the zoning board of appeals in the zoning case, Deerfield Restaurant Complex (hereinafter Deerfield) was organized as a nonprofit corporation to operate a food service in the office complex. Zoning authorities issued Deerfield an occupancy permit, and Deerfield then applied to the Lake County liquor control commission for a class A liquor license. The county zoning officer advised the commission chairman that the serving of alcoholic beverages would be inconsistent with the office center's zoning. The commission was also informed about the existence and status of the zoning case. Deerfield's application for a liquor license was thereafter denied.

Deerfield then filed a complaint for mandamus. The complaint alleged that Deerfield had made an application for a liquor license which was regular in form and which fully complied with the county liquor control ordinance. The complaint also alleged that the liquor control commission denied the license application solely on the basis that the building and zoning department was of the opinion that serving liquor in such a facility was not permitted under the zoning ordinance. The complaint further alleged that there were no statutory provisions limiting liquor service to any particular zoning use category and that in the absence of such provisions the defendants were without authority to deny Deerfield's liquor license application.

Defendants filed a motion to dismiss, asserting that the liquor control ordinance specifically authorized the liquor control commission to deny a license to any applicant who fails to satisfy zoning regulations. The motion further alleged that the commission exercised reasonable discretion in denying the liquor license. Finally, defendants maintained that Deerfield is barred from raising questions of zoning in the instant lawsuit as all zoning issues were previously litigated in the zoning case.

The motion to dismiss was denied. Defendants elected to stand on their motion, and a writ of mandamus was issued commanding the liquor control commission and its chairman to issue Deerfield the liquor license. Defendants unsuccessfully sought a stay from the circuit court and from this court. This appeal followed.

## DISCUSSION

### A. Zoning Case

■■ The zoning ordinance of Lake County is structured around the regulation of principal uses with those uses customarily incidental to any principal use being regulated as accessory uses. (See *County of Lake v. La Salle National Bank* (1979), 76 Ill. App. 3d 179, 395 N.E.2d 392.) The use in question, whether categorized as a restaurant, catering service, or tavern, is not permitted in an O-R zone. (Lake County Zoning Ordinance, art. 3, §II.) Thus the question becomes whether the operator of an employee's restaurant, serving liquor and operating on a for-profit basis, is a permitted accessory use to an office complex within the meaning of the zoning ordinance.

Under the zoning ordinance, an accessory use must be customarily incidental to the principal use, serving no other principal use, and must be subordinate in area, floor area, intensity, extent, and purpose to the principal use. It is required to contribute to the comfort, convenience, or necessity of users of the principal use. (Lake County Zoning Ordinance, art. 4, §VI(A).) The portions of this definition which are here in issue are the requirements that accessory use be "customarily incidental" to an office complex, subordinate in purpose to the principal use. In *County of Lake v. La Salle National Bank*, this court approved a definition of "incidental" as meaning something which is necessary, appertaining to, or depending on the principal use. "Customarily" was held to mean a practice which "should be sufficient to justify the observation that [it] is not unique or rare. It should be appreciable or perhaps substantial. It should be sufficient to constitute a recognized mode of activity in the field, but it need not be the more prevalent one." 76 Ill. App. 3d 179, 182, 395 N.E.2d 392, 394.

The county concedes that the provision of some sort of eating facility is customarily incidental to the operation of an office complex. Thus we must decide if an operation of the type and scope proposed here is customarily incidental to the office complex, or whether it would itself constitute a principal use. The standard of review for resolving this question is whether the decision of the board of zoning appeals is against the manifest weight of the evidence. *Fenyes v. State Employees' Retirement System* (1959), 17 Ill. 2d 106, 160 N.E.2d 810.

The evidence clearly establishes that the proposed facility is incidental to the operation of an office complex. Although the zoning board focused on whether the primary purpose of the facility was the furtherance of a good business relationship between each company and its own employees and guests, this analysis overlooks that the managers of

a large office complex may wish to provide a food service facility for the furtherance of a good business relationship between the center and its tenants. Thus, Tollway's leases with a substantial portion of its tenants require the provision of food service. Furthermore, the proposed use is in fact subordinate in size and purpose to the principal use within the meaning of the ordinance and does not constitute a separate principal use. The facility would be restricted to employees and their guests, would not advertise to the public and would have hours of operation reflecting the demand for meal service by the complex's employees. We find no merit to defendants' assertion that an independent profit-making business can never be an accessory use. The only case cited for this proposition, *Village of Riverside v. Kuhne* (1948), 335 Ill. App. 547, 82 N.E.2d 500, is concerned with the issue of customary home occupations as accessory uses and is therefore not controlling here.

The proposed service of liquor in the facility is a complicating factor, however. The first problem created is whether the proposed use should be considered as a whole, or split into its component parts (food service and liquor sales). If the proposed use is considered as a whole, sale of alcoholic beverages would not, in our view, disturb the conclusion that the proposed use is incidental to the principal use. This is because of the relatively small size of the proposed cocktail lounge, low alcohol to food sales ratio, and the fact that liquor would be sold for consumption on the premises and could not be carried out. Defendants seek to split the proposed use into food service and liquor sales, and focus particularly on whether liquor sales can qualify as an accessory use. One case cited by defendants (*Gross v. Zoning Board of Adjustment* (1967), 424 Pa. 603, 227 A.2d 824) took such an approach. In that case, the court held that a restaurant and snack bar were a proper accessory use to a bowling alley, but that service of liquor was impermissible. Treating the aspects of the use as being distinct, the court was concerned with what it viewed as the multiplication of an accessory use (liquor service) on an accessory use (the snack bar) on a variance (the bowling alley itself) in a residential zone.

In our opinion, the better approach is to view the proposed use as a whole. Breaking a use into its component features is not in accord with the overall scheme of the zoning ordinance which does not address parts of uses. Indeed as Tollway North points out, the sale of liquor is not directly prohibited in any particular zone. In sum, under the zoning ordinance in question, the sale of liquor cannot be isolated from the context in which it is sold. We hold that the proposed use, taken as a whole, is incidental to the operation of the office complex.

The final question thus becomes whether the proposed use, again

when viewed as a whole, can also be said to be *customarily* incidental to an office complex. The zoning board of appeals heard evidence concerning three office complexes in Lake County, one in Cook County, and the food service of one of the tenants of Tollway North. The board found that the only examples of similar uses cited by Tollway North "differ substantially from the proposed use" as the proposed use would establish an independent, privately managed business, would provide more extensive services, and would serve alcoholic beverages. After reviewing the evidence, we cannot say that this finding is against the weight of the evidence. In our view, Tollway North has simply failed to demonstrate that its proposed facility is a "recognized mode of activity in the field" as required by *County of Lake v. La Salle National Bank*.

The principal authority relied on by plaintiff does not lead to a different conclusion. In *Kushner v. Lawton* (1953), 351 Ill. App. 422, 115 N.E.2d 581, the court found that a small ground level food store was customarily incident to an apartment building, where there were 2,000 tenants living more than four blocks from a shopping district and where the evidence showed that such shops existed in considerably less than half of all apartment buildings in the United States and the shop was to be in the building interior with patronage limited almost exclusively to building tenants. Although it bears many resemblances to the case at bar, *Kushner* is not controlling because there the proposed use was both incidental and customary under the definitions in *County of Lake v. La Salle National Bank*.

### B. Mandamus Action

This case concerns the relationship between Lake County's liquor control ordinance and its zoning ordinance, and the propriety of mandamus relief. Section 6 of the liquor control ordinance requires all applicants to submit certifications from the building and zoning department indicating that the premises proposed to be licensed comply with the zoning ordinance. While defendants defend the validity of section 6, Deerfield makes several attacks on the operation of this section in the instant case.

Both parties rely on article IV, section 1 of the Liquor Control Act (Ill. Rev. Stat. 1977, ch. 43, par. 110), which confers on local officials certain powers concerning the issuance of liquor licenses, including the power:

> "* * * to establish such further regulations and restrictions upon the issuance of and operations under local licenses not inconsistent with law as the public good and convenience may require; * * * provided, however, that in the exercise of any of the powers

granted in this section, the issuance of such licenses shall not be prohibited except for reasons specifically enumerated in Sections 2, 8, 8a and 21 of Article VI of this Act."

Defendants attempt to reconcile the "further regulations" clause of section 1 with the "reasons specifically enumerated" clause. In so doing, they cite *Tavern Owners Association v. County of Lake* (1977), 52 Ill. App. 3d 542, 367 N.E.2d 748, where this court stated:

"Thus, where a liquor control regulation does not deny a license to a person or class not specified in the enabling statute * * *, does not seek to establish a new system of licensing employees parallel to the Liquor Control Act * * *, and is reasonably necessary to make effective the power granted to make further regulations for the public good and convenience, it is valid even though the Liquor Control Act is silent regarding the particularized subject matter of the regulation." (52 Ill. App. 3d 542, 546, 367 N.E.2d 748, 751.)

See also *Picco v. Simon* (1967), 80 Ill. App. 2d 277, 225 N.E.2d 389, upholding a local liquor commissioner's denial of a license for failure to comply with frontage consent restrictions, where their operation did not prohibit any person or class from obtaining a license and was uniform in operation. In our view, zoning restrictions are sufficiently analogous to frontage consents so that issuance of a liquor license may properly be conditioned on the applicant's satisfaction of zoning requirements.

■ In light of the preceding discussion, we hold that the writ of mandamus was improperly issued. It is well settled that before a writ of mandamus will issue, the petitioner must show compliance with all valid requirements of applicable ordinances. (*Kramer v. City of Chicago* (1978), 58 Ill. App. 3d 592, 374 N.E.2d 932; *Solomon v. City of Evanston* (1975), 29 Ill. App. 3d 782, 331 N.E.2d 380.) It is clear that Deerfield failed to comply with section 6 of the liquor control ordinance requiring a certificate from the zoning department. As defendants point out, had Deerfield sought such a certificate from the zoning officer, this court would not have been called upon to rehash the merits of a zoning case in a subsequent liquor license proceeding. Indeed, it is not unfair to categorize the instant action as an impermissible attempt by Deerfield to do in stages what it was unable to achieve in *Tollway North*.

For the foregoing reasons the judgment of the Circuit Court in *Tollway North* is affirmed and the order granting a writ of mandamus in *Deerfield* is reversed.

No. 79-152 affirmed; No. 79-299 reversed.

WOODWARD and UNVERZAGT, JJ., concur.