EVANOFF *v.* HALL.

1. APPEAL AND ERROR—CHANCERY CASE—DE NOVO REVIEW—CON-
STRUCTIVE TRUSTS.
    Suit to declare that defendant held title to city lot as construc-
        tive trustee for plaintiff and to require conveyance to plaintiff,
        being a chancery case, is reviewed *de novo* by Supreme Court.

2. PRINCIPAL AND AGENT—PURCHASE OF LOT.
    Agreement whereby defendant was to purchase city lot for plain-
        tiff in the event latter was unable to attend scavenger sale
        constituted defendant plaintiff's agent for such purpose.

3. SAME—CONSTRUCTIVE TRUST—STATUTE OF FRAUDS.
    Agent for purpose of purchasing lot at scavenger sale who fur-
        nished his own money and took title in his own name and re-
        fused to convey it to principal except at a substantial profit
        clearly evidenced bad faith and fraud for which equity will
        impose a constructive trust on the lot in favor of principal and
        statute of frauds as a defense may not be interposed to pre-
        vent enforcement of such trust upon payment to defendant of
        amount he had paid at the scavenger sale plus taxes and in-
        terest (3 Comp. Laws 1929, § 13413).

4. TRUSTS—CONSTRUCTIVE TRUST.
    A person who agrees with another to purchase property on be-
        half of the other and purchases the property for himself
        individually holds it upon a constructive trust for the other,
        even though he is not under a duty to purchase the property
        for the other.

5. COSTS—WAIVER—NEW TRIAL—APPEAL.
    Where plaintiff had waived costs in circuit court except as al-
        lowed on defendant's motion for a new trial and then pre-
        vailed on appeal, plaintiff is awarded such motion costs and
        costs on appeal.

Appeal from Genesee; Elliott (Philip), J.　Sub-
mitted January 2, 1945.　(Docket No. 21, Calendar
No. 42,827.)　Decided February 20, 1945.

An agent to buy property has a duty of loyalty to his principal,
see 2 Restatement, Agency, § 387, comment b.

Bill by Michael Evanoff against George E. Hall to compel conveyance of a parcel of real estate. Decree for plaintiff. Defendant appeals. Affirmed.

*Andrew J. Transue,* for plaintiff.

*Foster & Cameron (Dwight L. Wilson,* of counsel), for defendant.

STARR, C. J.   In May, 1941, plaintiff filed bill of complaint and later an amended bill, alleging that at the scavenger sale held by the State land office board in February, 1941, defendant, as his agent, had purchased lot 509 of Farnamwood in the city of Flint, and held title to said lot as a constructive trustee for ˚plaintiff.   He asked that defendant be decreed to convey said lot to him upon payment of $95, which was the amount defendant had paid for the lot at the scavenger sale.   Defendant answered, admitting he had purchased the lot in his own name but denying that he had agreed to purchase it for plaintiff.   At the conclusion of all proofs the trial court entered a decree determining that defendant held title to the lot as a constructive trustee for plaintiff and that he should convey the lot to plaintiff upon payment of the sum of $128, which included the $95 paid at the scavenger sale and taxes and interest of $33.   Defendant's motion for a new trial was denied, and he appeals from such decree. This being a chancery case, we review *de novo.*

Plaintiff and defendant were both residents of the city of Flint in Genesee county and had been friends for many years.   Plaintiff was an attorney, and on February 4, 1941, was representing defendant in connection with his divorce suit pending in Sanilac county.   On that date defendant called for plaintiff at his home in Flint and drove him to

Sandusky, the county seat of Sanilac county. While at plaintiff's home and during the trip they discussed said lot 509, which was located adjacent to plaintiff's home property. He explained to defendant that the lot would be offered for sale at the scavenger sale in February and that he intended to buy it and build a garage on it. He testified in part:

"*Q.* Now, on the occasion that he (defendant) picked you up over to your house was there some discussion about   *   *   *   the lot next door to your home?

"*A.* That is true;   *   *   *   we spoke about that lot and how there was going to be a scavenger sale which was going to be held in a few days, I was going to buy it.   *   *   *

"We talked about that off and on while we were on the way to Sandusky.   *   *   *

"I told Mr. Hall that this lot was going to be offered for sale on the scavenger sale and that I was going to buy it or bid in for it. He then told me that he would attend the scavenger sale because he expected to buy some lots around there or perhaps even in the same neighborhood.   *   *   *

"I told him that I expected to be at the sale, I would be there or I might for some reason   *   *   *   be delayed a little while. Then he said that he would bid in the lot for me in my name and buy it for me in the event that I did not happen to be there at the time, and I requested him to do that."

On the day of the scavenger sale plaintiff was detained at his office and was unable to attend the sale. Defendant attended, bid in the lot in his own name at a price of $95, and later obtained a deed therefor. Plaintiff testified that on the day of the sale he telephoned defendant and asked him why he had bought the lot in his own name and that defendant replied, "Well, it is your lot; I bought it

for you. There is nothing for you to worry about. I will be over in a day or so, turn the papers over to you." Plaintiff testified further:

"He (defendant) came over to the office in a few days and said he had forgotten to bring the papers with him, so he was going to come in, he said, in a few days again. Well, we talked about it off and on and he gave me one excuse after another.  *  *  *

"Every time I talked to him it was my lot, he was willing to turn it over to me, but he always had something or other that he could not do it just then."

Plaintiff's uncle, who attended the scavenger sale, testified that at the sale defendant said he was buying the lot for plaintiff. Later, defendant refused to convey the lot to plaintiff except upon payment of $300. He admitted that he and plaintiff discussed the lot while on their trip to Sandusky and that plaintiff informed him that he intended to buy it at the scavenger sale. However, he denied agreeing to buy it for plaintiff. Defendant testified in part:

"Mike (plaintiff) and I talked about the lot; as far as any agreement that [I] was to buy the lot for him, there was no agreement.  *  *  *

"Q. Did he (plaintiff) tell you that he expected to buy the lot?

"A. He said he was intending to buy the lot. *  *  * I did not know but what he had changed his mind.  *  *  * I got it on the minimum bid, $95.  *  *  *

"Q. Afterwards  *  *  * did you have any conversation about turning the lot over to him?

"A. Well, Mike called me up  *  *  * the same day I purchased the lot, wanted me to come down here and buy the lot in his name, my money; I did not think that was a businesslike way to do. *  *  *

"That lot was bought here in the morning * * * and about 1:30 Michael called me, wanted to know what I was going to do about the lot; Michael was kind of mad, he said I was a two-timer and everything. * * *

"*Q.* Did he offer to pay for it?

"*A.* Well, he said, 'When you pay the money, just buy it in my name; I will give you the price of the lot.'"

On cross examination defendant testified in part:

"*Q.* * * * Going out to Mike's house that day, that is the first time you ever saw the lot, isn't it?

"*A.* Yes.

"*Q.* And you also became acquainted that day that Mike wanted the lot, didn't you?

"*A.* Yes.

"*Q.* And Mike did tell you he intended to buy it at the scavenger sale, didn't he?

"*A.* Yes; he did. * * *

"*Q.* And now you told him that you were going to be up at the scavenger sale that day * * * to buy some lots for yourself?

"*A.* Why, sure; I told him I attended scavenger sales. * * *

"*Q.* Well, now, after you bought it you did offer to come down and turn it over to Mike, didn't you?

"*A.* Well, I agreed to sell it to Mike for what I had in the lot; my expenses and such like. * * *

"*Q.* Do you remember calling at his office a little later on, after the sale, and telling him that you were going to turn it over to him and be still friends with him, didn't you?

"*A.* What I wanted for it, yes. * * *

"*Q.* Later, all the way through this proceedings, you were still going to turn it over to him?

"*A.* Sure. * * *

"*Q.* * * * When you bought it you figured on taking advantage of the fact that Mike wanted the lot because it was right next door to his home,

you were going to make him pay for it, isn't that about the sum and substance of it?

"*A.* I did not necessarily have intentions of selling it to Michael. * * *

"I intend to build my own home on that lot; that is what I bought it for. * * *

"I did not know but what, at the time of the sale, Michael changed his mind about the lot. * * * In fact I said to my uncle, he was with me when I bought the lot, I said, 'I wonder where Michael is. He wanted that lot.'"

Defendant contends that because the understanding or agreement between the parties relative to the purchase of the lot was not in writing, plaintiff is barred from relief by the statute of frauds (3 Comp. Laws 1929, § 13413 [Stat. Ann. § 26.908]). Under the facts and circumstances shown by the record we cannot agree with such contention. The parties were close friends, and the evidence is convincing that defendant agreed to purchase the lot for plaintiff in the event he was unable to attend the scavenger sale. Under such agreement defendant became and acted as plaintiff's agent. *Saums* v. *Parfet,* 270 Mich. 165. His purchase of the lot in his own name, and his refusal to convey it to plaintiff except upon payment of a substantial profit to himself, clearly evidenced bad faith and fraud. To protect plaintiff against such fraud, equity will impose a constructive trust on the lot in his favor. Defendant cannot invoke the statute of frauds as a defense against his own fraud or to prevent the enforcement of a constructive trust in plaintiff's favor. Furthermore, the present case does not involve an agreement for the sale of land, but involves only defendant's agreement to perform certain services for plaintiff as his agent. All questions presented relative to the statute of frauds and the creation of a constructive trust in plaintiff's favor are determined ad-

versely to defendant by our decision in *Stephenson*
v. *Golden,* 279 Mich. 710. See authorities therein
cited.

In Restatement of the Law of Restitution, p. 795,
§ 194 (2), it is stated:

"A person who agrees with another to purchase
property on behalf of the other and purchases the
property for himself individually holds it upon a
constructive trust for the other, even though he is
not under a duty to purchase the property for the
other."

In commenting on the above-quoted subsection 2,
it is further stated (pp. 798, 799):

"Where one person orally undertakes to purchase
land on behalf of another, it may be urged that the
other cannot enforce a constructive trust because
the undertaking is oral and there is no compliance
with the provisions of the statute of frauds. The
answer to this objection is that the other is not en-
forcing an oral contract, but is enforcing a construc-
tive trust based upon the violation of fiduciary duty.
The undertaking to act for the other is sufficient to
constitute the relation of principal and agent be-
tween them. * * *

"The rule is applicable not only where a person
is employed professionally to purchase the property
for the employer, as in the case of a real estate
broker, but also where a person gratuitously agrees
to purchase the property on behalf of another."

See, also, 2 Restatement of the Law of Agency,
p. 952, § 414 (2).

The trial court saw and heard the parties and
their respective witnesses, and we are not disposed
to interfere with his determination that defendant
agreed to purchase the lot in question for plaintiff
at the scavenger sale. Under the facts and circum-
stances shown plaintiff was equitably entitled to a

conveyance of the lot upon payment of the sum of $128.

The decree of the trial court is affirmed. Plaintiff waived costs in circuit court except as allowed on defendant's motion for a new trial. Plaintiff may recover such motion costs and also costs on this appeal.

NORTH, WIEST, BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.