Village of Riverside, Appellee, v. Eugen Kuhne, Appellant.

Gen. No. 44,174.

Opinion filed November 16, 1948. Released for publication December 2, 1948.

LIPMAN & LOCHTAN, of Chicago, for appellant; DAVID I. LIPMAN and HARRY G. FINS, both of Chicago, of counsel.

TENNEY, SHERMAN, ROGERS & GUTHRIE, of Chicago, for appellee; S. ASHLEY GUTHRIE, of Chicago, of counsel.

MR. JUSTICE FRIEND delivered the opinion of the court.

The defendant, Eugen Kuhne, appeals from a judgment of the criminal court of Cook county finding him guilty of violating the zoning ordinance of the Village of Riverside and assessing a fine of $25 and $157 costs. The appeal was taken directly to the Supreme Court on the theory that the validity of a municipal ordinance was involved, and the trial judge so certified.

It appears that on October 3, 1944, a complaint was filed before a police magistrate charging defendant with unlawfully using the premises in question for business purposes in violation of the zoning ordinance of the Village of Riverside. Defendant was found

guilty and ordered to pay a fine of $25. An appeal was taken to the criminal court of Cook county, where the case was docketed as a quasi-criminal case entitled "The People of the State of Illinois v. Eugen Kuhne." Pursuant to a trial *de novo* defendant was again found guilty and a fine assessed against him in the sum of $25 and costs. About two months after judgment had been entered a motion was allowed to vacate the judgment and to substitute the Village of Riverside as party plaintiff. Judgment was then entered in favor of the new plaintiff in substantially the same form as the previous judgment. After this judgment was entered, defendant filed a motion in arrest of judgment, a motion to expunge the purported judgment, and a motion for a new trial. In each instance the defendant asserted that the zoning ordinance was void because it deprived him of his property without due process of law and denied him equal protection of the law as guaranteed by the Federal and State constitutions. All these motions were overruled. The Supreme Court pointed out in its opinion (*Village of Riverside v. Kuhne*, 397 Ill. 108) that defendant nowhere contended that the ordinance is invalid generally, but only as it applied to defendant's particular use of the premises, and held that this theory of the case raised only the question of the application of the ordinance and did not involve a determination of its validity. Accordingly the cause was transferred to this court for determination.

Much of defendant's brief is devoted to argument related to supposed technical errors in the proceedings before the police magistrate, in recitals by the clerk and the official stenographer of the criminal court, and in the assignment of Judge Schwaba to the criminal court to hear the case. Among the objections urged are the following: (a) that the police magistrate had no jurisdiction to render the judgment against the defendant because the action was brought by an in-

dividual and not by the municipality, directly contrary to section 10–6 of the Cities and Villages Act (Ill. Rev. Stat. 1945, ch. 24 [Jones Ill. Stats. Ann. 21.1353]) ; (b) that the complaint is vague, incomplete, ambiguous and insufficient to predicate a charge of violation of an ordinance of the Village of Riverside, or to sustain a conviction thereon; (c) that the trial of the case with "The People of the State of Illinois" as the plaintiff, and the judgment of the criminal court in favor of "The People of the State of Illinois" were contrary to the statute and therefore void; and (d) that after entry of the judgment in favor of "The People of the State of Illinois" the trial court had no jurisdiction to allow the motion of the Village of Riverside asking that it be substituted for "The People of the State of Illinois" and that the judgment be amended accordingly. Without attempting to discuss all these preliminary and technical propositions in detail, it may be briefly stated that we do not consider the complaint before the police magistrate as defective. The complaint charges that on September 29, 1944, in the Village of Riverside, Cook county, Illinois, the defendant unlawfully used the property at 25 North Longcommon road, for business purposes in that he conducted a real estate business and maintained a real estate office thereon; that the property is in District A as established by the zoning ordinance of said village; and that such use of the property is in violation of said ordinance. The point urged is that the charge in the complaint that the property is in District A created an ambiguity as to whether Residence District A or Business District A was referred to, but if there was such an ambiguity it was sufficiently cleared up by reference to the location of the property by street number, as stated in the complaint. Moreover, under the established rule in this State, it is immaterial whether or not the complaint was defective, since a suit to recover a penalty for violation of an ordinance is a civil suit, not a criminal prose-

cution (*City of Chicago v. Knobel,* 232 Ill. 112), and a complaint is not necessary to the prosecution of a suit before a police magistrate or justice of the peace for violation of an ordinance; its only purpose is to lay the foundation for the issuance of a warrant, and it is important only in determining whether or not the warrant has been properly issued, a question not raised in this proceeding. In *Dodge v. People,* 113 Ill. 491, it was held to be the settled construction of our statute relating to proceedings before justices of the peace that no written pleadings are required; see also the earlier case of *City of Alton v. Kirsch,* 68 Ill. 261. The warrant in this case was issued on the sworn complaint of the chief of police of Riverside, as required by section 10–8 of the Cities and Villages Act [Ill. Rev. Stat. 1945, ch. 24, par. 10–8; Jones Ill. Stats. Ann. 21.1355]. Since defendant appeared and there was no arrest, the warrant had no other function but to serve as a summons. The suit then proceeded before the police magistrate, who found defendant guilty and assessed a fine against him. By virtue of sections 10–6 and 10–7 of the Cities and Villages Act [Ill. Rev. Stat. 1945, ch. 24, pars. 10–6, 10–7; Jones Ill. Stats. Ann. 21.1353, 21.1354] the proceeding was brought by the village and the fine assessed was payable into the village treasury.

The only question in the criminal court on appeal from the police magistrate was whether the evidence showed the defendant guilty of violating the ordinance for which he was being tried. This conclusion follows from the cases cited holding that no written pleadings are required in an action started before a justice and that no defect in the complaint or in the proceedings before the justice will vitiate his judgment if he has jurisdiction to enter it.

The objection that the case was prosecuted by the People of the State of Illinois and judgment entered in their name may be briefly disposed of by point-

ing out that the People of the State of Illinois had no connection with the case any more than did any other third party and took no part in the proceedings. As a matter of fact, before the transcript of proceedings was approved in the court below, the initial caption was corrected to show the "Village of Riverside" as plaintiff instead of "The People of the State of Illinois," and the transcript was also corrected to show that the evidence of plaintiff was offered by the Village of Riverside. . The prior judgment of January 10, 1946, was entered by the clerk of the criminal court and in the name of "The People of the State of Illinois." Subsequently on February 7, 1946, less than 30 days after the entry of the judgment, the *defendant* made a motion to vacate it, and the plaintiff on the same day made a motion to correct the record to show the "Village of Riverside" as plaintiff. Thereafter on March 22, 1946, the motion to vacate the judgment was allowed, so that the original judgment of January 10 was a complete nullity. The judgment entered on March 22 was in favor of the Village of Riverside. Defendant's contention that the order vacating the judgment of January 10 was in some way beyond the jurisdiction of the court is inconsistent with his argument that the earlier judgment is a nullity. The motion to vacate was made by defendant himself within 30 days after the entry thereof, and he cannot well complain that it was granted, even though the reasons for granting it were different from those urged in his motion. Since, as defendant claims, the judgment entered by the clerk on January 10 for "The People" was void on the face of the record, the court could set it aside on motion within the 30-day period. Defendant's remaining objection preliminary to the discussion of the real issue involved is that Judge Schwaba was not a judge of the criminal court on January 10 and March 22, and that therefore the judgments entered were and are void and *coram non judice*. With respect to this con-

tention it may be pointed out that the constitutional provision with respect to the assignment of judges to' the criminal court reads as follows: ''The terms of said criminal court of Cook county shall be held by one or more of the judges of the circuit or superior court oi Cook county, as nearly as may be in alternation, as may be determined by said judges, or provided by law. Said judges shall be *ex officio* judges of said court.'' (Illinois Constitution of 1870, art. VI, sec. 26.) Pursuant to this provision the superior court has adopted the following rule: ''The Judges who are to sit in the Criminal Court of Cook County shall be annually designated by the Executive Committee hereinafter mentioned from among the Judges, as nearly as may be in rotation.'' (Rule 2, sec. 2.) It thus appears that the power to assign judges of the superior court to the criminal court is vested in the executive committee of that court, and although they are directed to make this assignment annually, it can hardly be claimed that they are barred from making an assignment during the year if the occasion warrants it. Judge Schwaba was assigned to the criminal court for the court year beginning September 1944, under a general order, and was specifically assigned to that court at all times when any proceedings were had or any order entered in this case by virtue of an order of the executive committee that the assignment was to run ''for such further time thereafter as shall be required to hear and determine any matter directly or incidentally connected with any cause which such Judge had . . . heard as a Judge of the Criminal Court of Cook County during the period for which he was assigned, notwithstanding the fact that such period of assignment has expired and the Judge is holding Superior Court.'' The only possible exception to this statement is the date of January 10, 1946, at which time an order was entered, but it was held void and vacated by the judgment order of March 22, 1946. The

trial began on January 8, 1945, and the introduction of evidence was completed June 29 of that year, all within the specific court year for which Judge SCHWABA was assigned. Thereafter briefs were filed and further arguments set for November 6 and December 3, 1945, on each of which days he was specifically assigned in advance by the executive committee to the criminal court to hear this case. Later the case was again set for decision on January 4, 1946, when Judge SCHWABA was specifically assigned to the criminal court, and the same procedure was followed by a special assignment prior to the entry of the order on March 22, 1946. Accordingly there is no substance to the claim that he was not at all times when this case was tried and decided, duly assigned and acting as a judge of the criminal court.

With the claimed unconstitutionality of the zoning ordinance disposed of by the Supreme Court of Illinois (*Village of Riverside v. Kuhne, supra*), the only remaining question presented is whether the defendant's real estate business can be construed as a "home occupation" of a kind that is "accessory" and "customarily incident" to the use of property for residential purposes so as to constitute a permissible use of property in Residence District A. The factual situation set forth in plaintiff's brief with respect to this question is uncontroverted. The zoning ordinance of the Village of Riverside divides the village into two general categories: (1) a residence district for family dwellings, subdivided as to various types—single-family residences, etc.; and (2) a business district zoned for business purposes. Defendant's lot has a 50-foot frontage on Longcommon road and is 245 feet deep. The south line of his lot is the dividing line between Residence District A and Business District A. This property has been occupied as a single-family residence for over 45 years. It was used and zoned for that purpose when defendant bought it in the summer of 1944,

just before this litigation started. The property to the northeast and northwest of defendant's lot is also in Residence District A, and with the exception of one apartment building 500 feet northeast thereof, the area is occupied by single-family residences, schools and churches. The apartment building was erected prior to the passage of the zoning ordinance, and is the only existing nonconforming use in the vicinity. To the west and adjoining defendant's property is the forked junction of Longcommon road, coming from the northeast, and Woodside road, coming from the northwest, with a triangular park separating the two roads immediately north of the junction. The southern apex of the park is opposite the north line of defendant's lot and in front of the lot is a wide pavement formed by the junction of the two roads. The property to the west, across Longcommon and Woodside roads, except the lot at the corner of Woodside road and Forest avenue, is also zoned for single-family residences. The corner lot is improved by an apartment building containing professional offices, erected prior to the passage of the zoning ordinance. The use of this lot was formerly nonconforming, but by an amendment to the zoning ordinance passed in 1944, the lot has been rezoned in the Office-Residence District B-4, where apartments and offices are permitted. To the south of defendant's property in Business District A is, first, a small frame real estate office, and south of that, at the corner of Burlington street, a store building. In compliance with a building-line ordinance, the store building is set back 10 feet from the street line. The real estate office is set back much farther. The boundary line between the residence and business districts, at the south border of defendant's property, has been the same since the zoning ordinance was first passed in 1922. At that time defendant's property was used for residence purposes, and the property to the south was used for business purposes, as at present. During the entire time

in which the zoning has been in effect, defendant's property has been bought, sold and used in conformity with the regulations established by the ordinance. When defendant bought the property in 1944, the uses of the property in the adjacent residence and business zones were obvious and known to him.

Defendant purchased this property subject to zoning regulations in June 1944, and paid $8,600 for it. He was an experienced real-estate broker, having been in that business in La Grange for the preceding four years. He occupied the house as a residence for himself, his wife and daughter, and used one room as an office for his real estate brokerage business. His wife did his typing and helped with the office work. He advertised his business in newspapers published in Riverside and adjoining communities, and in a metropolitan newspaper in Chicago. In order to further attract customers, he placed a pair of signs on a tree in his yard, the upper sign containing the words ''Real Estate'' in large letters, and the lower the name ''Eugen Kuhne'' with ''Exclusive Broker'' written under it. He placed much emphasis on these signs in his business, and testified: ''I couldn't conduct my real estate business if I didn't have a sign out there.''

It appears from the evidence that there are approximately 3500 to 4000 parcels of land in the Village of Riverside subject to the zoning ordinance. Defendant selected eight of these, on each of which, he contends, there is a tolerated use in some degree equivalent to the use of defendant's property herein complained of. These eight parcels are in widely separated parts of the village, and none of them, except that at the northwest corner of Forest avenue and Woodside road belonging to Henry A. Miller, is in the vicinity of defendant's property. The parcels and uses referred to are:

(1) the residence of A. W. Wendell, a building contractor, 196 Olmstead road, where a desk is maintained

for keeping records etc., and where a business truck is kept in the garage;

(2) the residence of Violet R. Martin, township collector, 143 Bloomingbank road, who keeps a desk and records in her home where she can work at times when she is not at her office in the Town Hall;

(3) the residence of William E. Southwood, a carpenter contractor, 116 Forest avenue (which is in Residence District B), who keeps his records and books of account in his home, and also houses a Ford truck in his garage;

(4) the residence of Herbert J. Bassman, a newspaper manager and editor, 209 Lawton road, who writes newspaper editorials on the dining-room table in his home, and also develops photographs in his basement;

(5) the property at the northwest corner of Forest avenue and Woodside road, owned by Henry A. Miller, improved by a two-apartment building erected prior to the adoption of the zoning ordinance, which for over fifteen years has had professional offices; it was formerly a nonconforming use but is now zoned for the purposes used;

(6) the residence of Frank J. Buzek, a real estate broker, 493 Uvedale road, who has a business office elsewhere, but sometimes sees people on business in his home and has a desk there;

(7) the residence of Frank Sikorski, a wholesale meat dealer, 172 Parkview avenue, who keeps a truck in his garage; and

(8) the residence of Robert J. Cerny, a plastering contractor, 280 Nuttall road, who has a desk and telephone in his home and sometimes writes letters of a business character there. In none of the instances cited was the residence used for general contacts with customers accompanied by advertising signs inviting them to come in and do business. With the exception of the use of the property at Forest avenue and Woodside road, formerly a nonconforming use but now re-

zoned to make the use conforming, there is no evidence that the village authorities knew of any of the uses listed. There is no evidence that the village authorities ever tolerated any use of property in a residence district, similar to the use of defendant's property in suit, or any other use violative of the zoning ordinance.

Among the witnesses who testified upon the hearing was Howard R. Olson, a graduate engineer, chairman of the village zoning board of appeals, and for 20 years a member of the staff and secretary of the Chicago Regional Planning Commission. After an exhaustive review of the uses of property in the neighborhood of defendant's residence, he testified that Riverside is predominantly a residential community, with some apartment buildings. The principal business houses in the community are those that serve the people in their shopping needs. Defendant's property is characterized more by the residence property to the northwest and northeast of it than by the business property to the south of it. Mr. Olson stated that there must necessarily be a dividing line between residential and business property, and that to include the defendant's property in the business district would undermine the confidence of property owners to the north in the stability of that property as residential property, and would reduce the value as residential property for which it is now zoned, and also reduce the demand for unused business property in the business district. His conclusion was that the inclusion of defendant's property in the residential district was reasonable.

In his own behalf defendant testified that his lot as zoned for residential purposes was worth $6,000, whereas if it were zoned for office purposes it would be worth $12,000, but he stated only scant facts to support his opinion, and had in fact sold only one piece of property in the vicinity and did not know of any other purchase or sale except that of his own lot for

$8,600. That price was paid in June 1944, for the property as zoned for residential purposes. Immediately thereafter defendant made extensive improvements in the house, and his valuation of $6,000 disregarded both the price paid and the value of the improvements added.

Aside from the technical procedural questions raised by defendant, some seven in number, there remain only two or three propositions advanced by him in his brief. The first of these is that defendant was lawfully engaged in a home occupation as permitted by the zoning ordinance. As supporting evidence he quotes from Webster's New International Dictionary and the Oxford Dictionary, and cites the case of *Peasley v. Murphy,* 381 Ill. 187. That case arose under the Unemployment Compensation Act and called for a clarification of what is included in the definition of employment under that statute. Defendant's only reference to the case in his argument thereon is that the expression "home work" was held to be synonymous with "home occupation." Without unduly extending this opinion by referring to the definition of "accessory uses" and the meaning of the word "incident" as used in the ordinance, it seems clear to us that the carrying on of a real estate business with advertising signs inviting customers to come and do business on the premises is not accessory or customarily incident to the use of the property for residential purposes, and is not therefore a permissible use even if real estate brokerage could be classed as a profession or home occupation. Real estate brokerage is not claimed to be, and at any rate is not, a "profession" within the meaning of that term as used in the zoning ordinance. In *Pennock v. Fuller,* 41 Mich. 153, 2 N. W. 176, the court said that "real estate agencies are no more professions than any other business agencies." Neither is defendant's real estate business a "home occupation" of the kind permitted by the zoning ordinance. Provisions of

zoning ordinances similar to those in Riverside relate to professional offices and home occupations such as that of doctors, and are commented upon and construed in Bassett's Zoning (Russell Sage Foundation Edition, 1936, pp. 100, 101) as follows: "During the formative period of comprehensive zoning it became evident that districts could not be confined to principal uses only. It had always been customary for occupants of homes to carry on gainful employments as something accessory and incidental to the residence use. The doctor, dentist, lawyer, or notary had from time immemorial used his own home for his office. Similarly the dressmaker, milliner, and music teacher worked in her own home. The earliest zoning ordinances took communities as they existed and did not try to prevent customary practices that met with no objection from the community. . . . The accessory use must not be a business. A real estate office or a plumbing shop would be so regarded." Counsel for plaintiff argue with considerable force that if an otherwise permissible occupation results in repeated sales of goods or is accompanied by an advertising sign publicly inviting customers to resort to the house for business purposes, the use is no longer a semiprivate one confined to the home, but becomes a public business incompatible with a residence district; and a multiplication of such uses would result in all the detrimental effects on property values in the neighborhood that the zoning ordinance is designed to prevent.

Defendant introduced the testimony of a number of building contractors, a newspaper man and others to the effect that they used desks and telephones in their homes for business purposes, and that in some instances a light truck, at times containing tools, was kept in a residence garage. The zoning ordinance does not prohibit such incidental use of a dwelling by its occupants. It goes without saying, of course, that anyone may keep his account books in his home, his truck

in his garage, may talk to anyone in or from his home upon any subject, but such a use is in no sense comparable to the continuous carrying on of a recognized business on property involving repeated contacts with customers or accompanied by advertising signs inviting the public to come to the office to transact business. Moreover, proof that there were other violations of the ordinance, if the evidence sustained that conclusion, would not excuse defendant's violation.

As the remaining ground for reversal it is urged that there is no basis in the record to warrant the assessment of $157 costs against the defendant. This point may be briefly disposed of by stating that no objection was made in the trial court to the amount of costs taxed and included in the judgment, and no motion was made that costs be retaxed, as provided for in section 26 of the act relating to costs (Ill. Rev. Stat. 1945, ch. 33 [Jones Ill. Stats. Ann. 107.064]). Consequently, the objection cannot be raised for the first time on appeal. *Mitchell v. Art Institute of Chicago,* 269 Ill. 381.

We are of opinion that the judgment of the criminal court should be affirmed, and it is so ordered.

Judgment affirmed.

SULLIVAN, P. J., and SCANLAN, J., concur.