JOHN A. TYLLE, APPELLANT, V. CYRIL ZOUCHA, DOING BUSINESS AS
ZOUCHA AUCTION & REALTY COMPANY, APPELLEE.
412 N.W.2d 438

Filed September 18, 1987. No. 85-492.

George H. Moyer, Jr., of Moyer, Moyer, Egley & Fullner, for appellant.

Douglas R. Milbourn of Tessendorf, Milbourn & Fehringer, P.C., for appellee.

Robert M. Spire, Attorney General, and Jill Gradwohl Schroeder, for amicus curiae State of Nebraska.

Thomas J. Fitchett of Pierson, Ackerman, Fitchett, Akin & Hunzeker, for amici curiae National Association of Realtors and Nebraska Realtors Association.

Richard L. Boucher, for amicus curiae Nebraska Dental Association.

David R. Buntain and Kathleen A. Jaudzemis of Cline, Williams, Wright, Johnson & Oldfather, for amici curiae Nebraska Medical Association, Nebraska Society of Certified Public Accountants, Nebraska Society of Architects, and Nebraska Society of Professional Engineers.

KRIVOSHA, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

WHITE, J.

This is an appeal from the district court for Platte County. Appellant, John A. Tylle, originally brought this suit in the

district court against the appellee, Cyril Zoucha, doing business as Zoucha Auction & Realty Company, alleging that the appellee negligently failed to sell land the two had contracted to sell by auction.

In the fall of 1980 the parties to this appeal contracted to sell by auction land the appellant owned. The terms provided that the sale would be "with reserve," i.e., a minimum price of $3,000 per acre. In the event the price was not obtained, Zoucha Auction & Realty Company was granted exclusive listing of the land until February 15, 1981. The land was not sold at the auction conducted by Zoucha, nor was it sold in a later auction conducted by another auctioneer. The appellant finally sold the property himself at a price of $2,500 per acre. Tylle filed suit against Zoucha for negligently failing to sell his property, alleging damages in the amount of $20,908.

On April 17, 1985, the defendant moved for summary judgment. The district court judge granted the motion for summary judgment on the basis that the suit against Zoucha was not brought within the applicable statute of limitations governing actions for professional negligence under Neb. Rev. Stat. § 25-222 (Reissue 1985). Zoucha was also granted his cross-claim for damages in the amount of $812.04. Tylle's motion for new trial was denied. This appeal was originally heard on January 28, 1987. A rehearing on the issue of the constitutionality of § 25-222 was ordered and took place on May 28, 1987.

Appellant assigns as error that the trial court incorrectly found that the appellee was a professional and therefore was to be afforded the protection of the professional negligence statute of limitations as set out in § 25-222. Appellant also contends that the trial court erred in granting the appellee's motion for summary judgment on the ground that the appellant's case was not brought within 2 years from the date of the damage caused by appellee's negligence and, finally, that the trial court erred in failing to grant appellant's motion for new trial. We reverse and remand.

Tylle's assignments of error basically revolve around the question of whether a real estate broker is a professional. From our investigation of the applicable case law we note that the

question of whether a real estate broker is a professional has never been specifically addressed by this court. Looking to the law of other states, although the issue can certainly not be said to have arisen often, several cases have explicitly held that real estate brokers are not professionals. The Michigan Supreme Court, in *Pennock v. Fuller*, 41 Mich. 153, 155, 2 N.W. 176, 177 (1879), stated:

> Real estate agencies are no more professions than any other business agencies. A commission merchant, or an agent for the sale of any particular kind of personal property acts in an analogous capacity. Any one can assume and lay down such business at pleasure, and any one can conduct it in his own way on such terms and conditions as he sees fit to adopt. There is nothing in our laws which would enable any court to draw a line between such business agencies. They are not classed as professions by popular usage or by law.

*Pennock* was followed in a 1977 case from the Michigan Court of Appeals. In *Coats v Uhlmann*, 87 Mich. App. 385, 274 N.W.2d 792 (1978), the Michigan Court of Appeals stated that the state's malpractice statute of limitations included only licensed professionals as opposed to any licensed occupation, noting the *Pennock* decision. A 1912 Iowa Supreme Court decision, *Cummings v. Penn. Fire Ins. Co.*, 153 Iowa 579, 134 N.W. 79 (1912), citing *Pennock*, held that real estate brokers are not professionals.

The clear majority of judicial holdings that a real estate broker is not a professional are in cases involving interpretations of zoning law. In *Village of Riverside v. Kuhne*, 335 Ill. App. 547, 82 N.E.2d 500 (1948), the Illinois Appellate Court held that real estate brokers were not professionals as that term is defined for purposes of Illinois zoning laws. Citing the *Pennock* decision, the Illinois court stated: "Real estate brokerage is not claimed to be, and at any rate is not, a 'profession' within the meaning of that term as used in the zoning ordinance." 335 Ill. App. at 560, 82 N.E.2d at 506. See *City of Rockford v. Eisenstein*, 63 Ill. App. 2d 128, 211 N.E.2d 130 (1965).

The issue of whether a real estate broker is a professional has

been similarly addressed in other states, with the unanimous conclusion that real estate brokers are not professionals. *Hackett v. Gale*, 104 N.H. 90, 179 A.2d 451 (1962); *Hancock v. Concord*, 111 N.H. 413, 285 A.2d 791 (1971); *Seaman v. Zoning Board of Appeals of Holliston*, 340 Mass. 488, 165 N.E.2d 97 (1960); *Capman v. Long Beach Tp.*, 95 N.J. Super. 523, 231 A.2d 852 (1967); *Jones v. Robertson*, 79 Cal. App. 2d 813, 180 P.2d 929 (1947). Finally, in the case of *Dlugos v. Zoning Bd. of Appeals of Trumbull*, 36 Conn. Supp. 217, 416 A.2d 180 (1980), the Connecticut Superior Court stated: "A plethora of decisions from other jurisdictions clearly indicates that a real estate broker simply cannot be categorized as a professional person." 416 A.2d at 182. The weight of the case law is clearly against the appellee's claim that a real estate broker is a professional.

Zoucha urges upon us the definition of professional set out in the opinions of this court, the most recent of which is *Overland Constructors v. Millard School Dist.*, 220 Neb. 220, 369 N.W.2d 69 (1985). There, we defined profession as an act or service arising out of a " 'vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual.' " *Id.* at 229, 369 N.W.2d at 75. Appellee argues that real estate brokerage is an occupation which is predominantly mental or intellectual, as opposed to manual or physical. While we agree that this is true, we do not agree that this alone qualifies an occupation as being a profession. Appellee attempts to bolster his argument by citing to us Neb. Rev. Stat. § 21-2202 (Reissue 1983), the definition section of the Nebraska Professional Corporation Act, Neb. Rev. Stat. §§ 21-2201 to 21-2222 (Reissue 1983). Section 21-2202 states in pertinent part:

As used in sections 21-2201 to 21-2222, unless the context otherwise requires:

(1) Professional service shall mean any type of personal service to the public which requires as a condition precedent to the rendering of such service the obtaining of a license or other legal authorization and which, except for the services of a real estate broker, prior to the passage of

sections 21-2201 to 21-2222 and by reason of law could not be performed by a corporation, including, but not limited to, personal services rendered by a certified public accountant, public accountant, dentist, osteopath, physician and surgeon, veterinarian, real estate broker, associate real estate broker, real estate salesperson, or attorney at law; and for purposes of sections 21-2201 to 21-2222, those professions pertaining to the diagnosis, care, and treatment of humans shall be considered to be of the same profession.

Aside from the fact that the definition of professional services is explicitly limited to use in the Nebraska Professional Corporation Act, we find this definition to also be unacceptable, as a profession is far more than the mere possession of a license to ply one's trade. Webster's Third New International Dictionary, Unabridged 1811 (1981), defines profession as:

4 a : a calling requiring specialized knowledge and often long and intensive preparation including instruction in skills and methods as well as in the scientific, historical, or scholarly principles underlying such skills and methods, maintaining by force of organization or concerted opinion high standards of achievement and conduct, and committing its members to continued study and to a kind of work which has for its prime purpose the rendering of a public service . . . .

In our opinion, this language best defines a profession. The definition stresses the long and intensive program of preparation to practice one's chosen occupation traditionally associated only with professions. It does not stress the difference between manual and intellectual labor which, while a trademark of the traditional professions, would seem to exclude some occupations commonly considered to be professions even though manual or physical. This definition also does not rely on the mere possession of a license. To rely solely on the possession of a license distorts the definition, as it would include many occupations which were traditionally not considered to be professions simply because they were licensed.

For each of these reasons we hold that a real estate broker

cannot be considered to be a professional for the purpose of the professional negligence statute of limitations. By so finding, we need not address the remainder of the appellant's assignments of error. Section 25-222 provides:

> Any action to recover damages based on alleged professional negligence or upon alleged breach of warranty in rendering or failure to render professional services shall be commenced within two years next after the alleged act or omission in rendering or failure to render professional services providing the basis for such action; *Provided*, if the cause of action is not discovered and could not be reasonably discovered within such two-year period, then the action may be commenced within one year from the date of such discovery or from the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier; *and provided further*, that in no event may any action be commenced to recover damages for professional negligence or breach of warranty in rendering or failure to render professional services more than ten years after the date of rendering or failure to render such professional service which provides the basis for the cause of action.

On rehearing the appellant argued that the statute of limitations governing professional negligence no longer serves the purpose for which it was adopted, to prevent a crisis in the medical profession due to the rise of malpractice litigation. That need, argues the appellant, was later met by the Nebraska Hospital-Medical Liability Act. The appellant also argues that the statute is unconstitutionally vague as ordinary men are required to guess at the meaning of the word "professional."

We note that the constitutionality of § 25-222 has previously been upheld on several separate occasions. In *Taylor v. Karrer*, 196 Neb. 581, 244 N.W.2d 201 (1976), we upheld this statute against challenges that it was unconstitutionally vague. There, we stated: "The legislative purpose is clear and although questions may arise as to who are professionals and what are professional services, we do not find the statute to be so imperfect or deficient as to render its enforcement impossible." *Id*. at 586, 244 N.W.2d at 204-05. In *Colton v. Dewey*, 212 Neb.

126, 321 N.W.2d 913 (1982), we again upheld the constitutionality of this statute against the same challenges, finding that the appellant's assignments of error were meritless. Finally, in *Rosnick v. Marks*, 218 Neb. 499, 357 N.W.2d 186 (1984), this statute was upheld against a challenge based on the open courts doctrine. See *Williams v. Kingery Constr. Co.*, 225 Neb. 235, 404 N.W.2d 32 (1987).

The unconstitutionality of a statute must be clearly established. All statutes are presumed constitutional, and the party challenging the constitutionality of the statute has the burden of showing the statute is unconstitutional. *Weiner v. State ex rel. Real Estate Comm.*, 217 Neb. 372, 348 N.W.2d 879 (1984); *In re Guardianship and Conservatorship of Sim*, 225 Neb. 181, 403 N.W.2d 721 (1987). As we have already passed on the issue of the constitutionality of this statute, we will not again go into an extended discussion of the constitutionality of § 25-222. We conclude by holding that the statute's presumption of validity has not been overcome.

We conclude that the district court judge incorrectly applied the professional negligence statute of limitations to this case and incorrectly granted the appellee's motion for summary judgment. We therefore reverse and remand for further proceedings consistent with these findings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

KRIVOSHA, C.J., not participating.

CAPORALE, J., concurring.

I concur in the result reached by the majority, not because real estate brokers are not professionals, but because the meaning of the word "professional" is so nebulous that the phrase "professional negligence," as used in Neb. Rev. Stat. § 25-222 (Reissue 1985), has no real meaning. As a result, § 25-222 contains no classificatory scheme which the courts may constitutionally apply.

The term "profession" originally contemplated only theology, law, and medicine, but as applications of science and learning extended to other human endeavors, other vocations came to be designated as such, a designation which implied professed attainments in special knowledge as distinguished from mere skill; a practical dealing with affairs as distinguished

from mere study and investigation; and an application of such knowledge to uses for others, as a vocation, as distinguished from its pursuit for its own purposes. *United States v. Laws*, 163 U.S. 258, 16 S. Ct. 998, 41 L. Ed. 151 (1896) (holding that a chemist was one belonging to a recognized profession for purposes of an act controlling the employment of foreign nationals). Accordingly, in addition to the traditional professions of law, *Rosnick v. Marks*, 218 Neb. 499, 357 N.W.2d 186 (1984), and medicine, *Smith v. Dewey*, 214 Neb. 605, 335 N.W.2d 530 (1983), this court has applied the professional period of limitations contained in § 25-222 to architects and engineers, *Witherspoon v. Sides Constr. Co.*, 219 Neb. 117, 362 N.W.2d 35 (1985); accountants, *Lincoln Grain v. Coopers & Lybrand*, 215 Neb. 289, 338 N.W.2d 594 (1983); medical technicians, *Swassing v. Baum*, 195 Neb. 651, 240 N.W.2d 24 (1976); and, without discussion, to those giving investment advice, *Educational Service Unit No. 3 v. Mammel, O., S., H. & S., Inc.*, 192 Neb. 431, 222 N.W.2d 125 (1974).

On the question of whether a real estate broker is a professional, the authorities are split. Generally, older cases and cases involving zoning regulations which allow "professionals" to maintain offices in their homes have found that a real estate broker is not such. *Jones v. Robertson*, 79 Cal. App. 2d 813, 180 P.2d 929 (1947); *Dlugos v. Zoning Bd. of Appeals of Trumbull*, 36 Conn. Supp. 217, 416 A.2d 180 (1980); *Village of Riverside v. Kuhne*, 335 Ill. App. 547, 82 N.E.2d 500 (1948); *Cummings v. Penn. Fire Ins. Co.*, 153 Iowa 579, 134 N.W. 79 (1912); *Seaman v. Zoning Board of Appeals of Holliston*, 340 Mass. 488, 165 N.E.2d 97 (1960); *Pennock v. Fuller*, 41 Mich. 153, 2 N.W. 176 (1879); *Coats v Uhlmann*, 87 Mich. App. 385, 274 N.W.2d 792 (1978) (citing *Pennock v. Fuller, supra*, in footnote); *Hancock v. Concord*, 111 N.H. 413, 285 A.2d 791 (1971); *Hackett v. Gale*, 104 N.H. 90, 179 A.2d 451 (1962); *Capman v. Long Beach Tp.*, 95 N.J. Super. 523, 231 A.2d 852 (1967).

More recent cases, however, have found real estate brokers to be professionals. *Speigner v. Howard*, 502 So. 2d 367 (Ala. 1987) (real estate brokers held to professional standards); *Bevins v. Ballard*, 655 P.2d 757, 763 (Alaska 1982) ("Real estate

brokers are licensed professionals, possessing superior knowledge of the realty they sell and the real estate market generally"); *Baker v. Leight*, 91 Ariz. 112, 117, 370 P.2d 268, 271 (1962) ("real estate profession"); *Easton v. Strassburger*, 152 Cal. App. 3d 90, 199 Cal. Rptr. 383 (1984) (real estate brokers possess professional knowledge and have professional obligations and duties); *Stoltz v. Delaware Real Estate Com'n*, 473 A.2d 1258 (Del. Super. 1984) (real estate brokers subject to professional self-regulation); *Falovitch v. Adrienne Realty, Inc.*, 345 So. 2d 839, 841 (Fla. App. 1977) ("A real estate broker is a professional person employed to use his professional knowledge . . ."); *Umphrey v. Sprinkel*, 106 Idaho 700, 682 P.2d 1247 (1983) (assumes, without deciding, that real estate brokers are professionals covered by the 2-year statute of limitations for professional malpractice); *Belleville National Bank v. Rose*, 119 Ill. App. 3d 56, 61, 456 N.E.2d 281, 285 (1983) (defendant "is a professional real estate broker"); *Menzel v. Morse*, 362 N.W.2d 465 (Iowa 1985); *Vislisel v. Bd. of Adjustment of Cedar Rapids*, 372 N.W.2d 316 (Iowa App. 1985) (in Iowa, realtors fall in the classification of professional persons; *Cummings v. Penn. Fire Ins. Co., supra*, thus no longer valid law in Iowa); *Mallet v. Maggio*, 503 So. 2d 37, 38 (La. App. 1986) ("A real estate broker is a trained professional"); *Evanoff v. Hall*, 310 Mich. 487, 17 N.W.2d 724 (1945) (language that real estate broker is employed professionally calls into question the validity of *Pennock v. Fuller, supra*); *Briggs v. Johnson*, 293 Minn. 49, 53, 196 N.W.2d 470, 472 (1972) ("professional real estate brokers"); *Johnson v. Brown*, 401 N.W.2d 85, 87 (Minn. App. 1987) ("professional real estate agent"); *McCarty v. Lincoln Green, Inc.*, ____ Mont. ____, ____, 620 P.2d 1221, 1225 (1980) ("real estate brokers' profession"); *N.J. State Bar Ass'n v. N.J. Ass'n of Realtor Bds.*, 93 N.J. 470, 474, 461 A.2d 1112, 1114 (1983) ("realty and legal professions"); *Paris of Wayne v. Richard A. Hajjar Agency*, 174 N.J. Super. 310, 416 A.2d 436 (1980) (calling *Capman v. Long Beach Tp., supra*, into doubt because real estate agents found to be professionals); *People v. Bacon*, 133 Misc. 2d 771, 508 N.Y.S.2d 138 (1986) (zoning law includes real estate brokers as professionals); *Melgard v. Hanna*, 45 Or. App. 133, 607 P.2d 795 (1980)

(professional malpractice case against attorney and real estate broker); *Hamilton Bank v. Rulnick*, 327 Pa. Super. 133, 475 A.2d 134, 135 (1984) (" 'profession of a real estate broker' "); *O'Brien v. R-J Development Corp.*, 387 N.W.2d 521, 524 (S.D. 1986) (alleged violation of duties as "professional real estate agents"); *Hurney v. Locke*, 308 N.W.2d 764, 768 (S.D. 1981) ("A real estate agent is a licensed professional . . ."); *Hoffman v. Connall*, 108 Wash. 2d 69, 75, 736 P.2d 242, 245 (1987) ("no persuasive reason to hold real estate brokers to a higher standard of care than other professionals"); *Walter v. Moore*, 700 P.2d 1219 (Wyo. 1985) (real estate profession). Recent legal scholarship also supports the conclusion that real estate brokers are professionals. A. Gaudio, Real Estate Brokerage Law § 272 at 332 (1987) ("A broker is a licensed professional"); R. Kratovil & R. Werner, Real Estate Law § 8.04 at 91 (8th ed. 1983) ("Today's broker is a highly skilled professional with a great breadth of knowledge of real estate law"); *Mandatory Disclosure: The Key to Residential Real Estate Brokers' Conflicting Obligations*, 19 J. Marshall L. Rev. 201 (1985) (buyer hires real estate broker on a professional basis).

This court has also already described "a professional farm manager, real estate broker, and appraiser." *Overbeck v. Estate of Bock*, 198 Neb. 121, 124, 251 N.W.2d 872, 874 (1977). And as the majority acknowledges, real estate brokers are identified among those rendering professional services as defined in the Nebraska Professional Corporation Act, Neb. Rev. Stat. §§ 21-2201 et seq. (Reissue 1983). Thus, I must conclude that real estate brokers are professionals, whatever "professional" may mean.

It is clear that in everyday common parlance professional has come to mean something other than that contemplated by *United States v. Laws*, 163 U.S. 258, 16 S. Ct. 998, 41 L. Ed. 151 (1896), or as defined by Webster's Third New International Dictionary, or as recently defined by us in *Witherspoon v. Sides Constr. Co.*, 219 Neb. 117, 362 N.W.2d 35 (1985); that is, an act or service arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual. People speak of

"professional bowlers," "professional musicians," "professional mechanics," "professional drivers," and the like. Our own statutes use the word "professional" in a variety of contexts to modify designated occupations, including a "professional artist or historian," Neb. Rev. Stat. § 14-2004 (Reissue 1983); "professional advisor," Neb. Rev. Stat. § 28-613 (Reissue 1985); "professional sport," Neb. Rev. Stat. § 28-614 (Reissue 1985); "professional assistants" from the Department of Roads, Neb. Rev. Stat. § 39-2107 (Reissue 1984); "professional investor," Neb. Rev. Stat. § 58-321 (Reissue 1984); "professional finders' fee," Neb. Rev. Stat. § 69-1317 (Reissue 1986); "professional counselors," Neb. Rev. Stat. §§ 71-102, 71-107, 71-110, 71-112, and 71-162 (Reissue 1986); "professional examiners," Neb. Rev. Stat. § 71-114 (Reissue 1986); "professional nursing," Neb. Rev. Stat. §§ 71-1,132.04, 71-1,132.06, 71-1,132.07, 71-1,132.11, 71-1,132.13, 71-1,132.16, 71-1,132.24, and 71-1,132.25 (Reissue 1986); "professional educators," Neb. Rev. Stat. § 79-332 (Reissue 1981); and, not least of all, "professional wrestling or boxing," Neb. Rev. Stat. §§ 81-8,129, 81-8,130.01, 81-8,132, 81-8,134, 81-8,135, 81-8,139, and 81-8,139.01 (Reissue 1981), and § 81-8,133.01 (Cum. Supp. 1986). In addition, other courts have described other occupations as professional, including an ambulance service, *Curtis Ambulance v. Shawnee Cty. Bd. of Cty. Com'rs*, 811 F.2d 1371 (10th Cir. 1987), and the installation of a computerized betting system at a racetrack, *Autotote Ltd. v. N. J. Sports & Expo. Auth.*, 85 N.J. 363, 427 A.2d 55 (1981).

Thus, professional, as commonly used today, really means nothing more than an activity by which one earns his or her livelihood. Since Neb. Rev. Stat. § 25-207 (Reissue 1985) provides a general 4-year period of limitations for tort actions, the word professional, as used in § 25-222, is ambiguous and therefore subject to interpretation, *North Star Lodge #227 v. City of Lincoln*, 212 Neb. 236, 322 N.W.2d 419 (1982), making necessary an examination of the legislative history, including the floor explanation or debate. *Spence v. Terry*, 215 Neb. 810, 340 N.W.2d 884 (1983).

The introducer's statement of purpose identifies physicians,

surgeons, and medical personnel as needing legislative protection, Statement of Purpose, L.B. 1132, Judiciary Committee, 82d Leg., 2d Sess. (Jan. 17, 1972), and doctors were specifically mentioned in the floor debates. Floor Debate, L.B. 1132, 82d Leg., 2d Sess. (Feb. 25, 1972). Why it was thought necessary to enact § 25-222 to protect physicians and surgeons is not at all clear, for Neb. Rev. Stat. § 25-208 (Reissue 1985) then provided a 2-year period of limitations for "malpractice" actions, as it still does. Whatever problems there may be in defining "malpractice," see, *Interholzinger v. Estate of Dent,* 214 Neb. 264, 333 N.W.2d 895 (1983), and *Stansbery v. Schroeder, post* p. 492, 412 N.W.2d 447 (1987) (refer to negligence actions against lawyers as legal malpractice actions), to date the malpractice portion of § 25-208 has been applied only to medical doctors, *Taylor v. Karrer,* 196 Neb. 581, 244 N.W.2d 201 (1976), *Toman v. Creighton Memorial St. Josephs Hosp., Inc.,* 191 Neb. 751, 217 N.W.2d 484 (1974), *Acker v. Sorensen,* 183 Neb. 866, 165 N.W.2d 74 (1969), *Stacey v. Pantano,* 177 Neb. 694, 131 N.W.2d 163 (1964), *Spath v. Morrow,* 174 Neb. 38, 115 N.W.2d 581 (1962), and *Williams v. Elias,* 140 Neb. 656, 1 N.W.2d 121 (1941), and a lawyer, *S.I.D. No. 145 v. Nye,* 216 Neb. 354, 343 N.W.2d 753 (1984) (applies both §§ 25-208 and 25-222 to lawyer failing to seasonably file an annexation document). During the Judiciary Committee hearings, architects were also mentioned as being within the scope of § 25-222. Judiciary Committee Hearing, L.B. 1132, 82d Leg., 2d Sess. (Jan. 17, 1972). In Senator Luedtke's words, the statute "would also cover the lawyers, the architects, *and everybody.*" (Emphasis supplied.) *Id.* at 19.

Section 25-222 has been challenged as being unconstitutional in five cases.

In *Taylor v. Karrer, supra,* this court was asked to determine whether § 25-222 was unconstitutional special legislation in violation of Neb. Const. art. III, § 18, and as being unconstitutionally vague as applied to two medical doctors.

In finding "substantial reasons for legislative discrimination" in regard to professional negligence, the *Taylor* court said:

We have seen in recent years the growth of malpractice

litigation to the point where numerous insurance companies have withdrawn from this field. Insurance rates are practically prohibitive so that many professional people must either remain unprotected or pass the insurance charges along to their patients and clientele in the form of exorbitant fees and charges. This unduly burdens the public which requires professional services. On the other hand, a victim of malpractice is frequently unaware of it, or deceived in regard to it, for long periods of time. Such a person's situation is different from that sustained by persons subjected to ordinary personal or property injury. The situation of professional people and of those to whom they render services is substantially different from the normal situation encountered in the rendering of ordinary services and injuries sustained thereby. Public policy dictates diverse legislation in regard to professional services.

196 Neb. at 586, 244 N.W.2d at 204. The court consequently found that the statute was not unconstitutional as special legislation.

Turning its attention to the challenge on grounds of vagueness, the *Taylor* court noted that an otherwise valid statute will not be held void or unintelligible and meaningless unless it is so imperfect and deficient in its terms as to render it impossible of execution and enforcement. The court held that § 25-222 was not unconstitutionally vague as applied, noting that

[t]he legislative purpose is clear and although questions may arise as to who are professionals and what are professional services, we do not find the statute to be so imperfect or deficient as to render its enforcement impossible. Such questions are faced in regard to many statutes and on occasion require construction.

196 Neb. at 586, 244 N.W.2d at 204-05.

The statute was also upheld on a constitutional challenge of vagueness in a case involving architects and engineers. In *Horn v. Burns and Roe*, 536 F.2d 251 (8th Cir. 1976), a steamfitter, who was injured when a heavy steamline failed, sued the engineering and architectural firm which had designed and

prepared the plans and specifications for the power plant and an organization of engineers which had been retained to approve the materials used in the construction of the power plant. The defendant engineering and architectural firm, as well as the organization of engineers, filed motions to dismiss, asserting that the steamfitter's action was barred by § 25-222. The steamfitter asserted that § 25-222 was so vague and indefinite as to be incapable of application and that it therefore unconstitutionally deprived him of his substantive right of action against the defendants. The U.S. District Court for the District of Nebraska sustained the defendants' motions to dismiss, holding that the practice of both engineering and architecture was "professional" within the ambit of the statute of limitations and that the work which was the subject of the complaint was "professional" in nature.

On appeal to the U.S. Court of Appeals for the Eighth Circuit, the court observed:

> The Supreme Court has recognized that a noncriminal statute is unconstitutionally vague under the due process clause of the Fifth or Fourteenth Amendments when its language does not convey sufficiently definite warning as to the proscribed conduct when measured by common understanding or practice. [Citations omitted.] A noncriminal statute is not unconstitutionally vague, however, where its terms are such that the ordinary person exercising common sense can sufficiently understand and fulfill its prescriptions. [Citations omitted.] A finding of vagueness will thus result only where "the exaction of obedience to a rule or standard * * * was so vague and indefinite as really to be no rule or standard at all * * *", *A. B. Small Co. v. American Sugar Refining Co.*, 267 U.S. 233, 239, 45 S. Ct. 295, 297, 69 L. Ed. 589 (1925), or where the statute is written in such terms that "men of common intelligence must necessarily guess at its meaning and differ as to its application * * *". *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S. Ct. 126, 127, 70 L. Ed. 322 (1926). [Citations omitted.]

*Horn*, 536 F.2d at 254.

The court further stated at 255:

The requirement of reasonable certainty does not preclude the use of ordinary terms to express ideas which find adequate interpretation in common usage and understanding. The terms "professional negligence" and "professional services" are utilized in this manner in Section 25-222. They are directed to acts of those engaged in occupations applying specialized knowledge and intellectual skills to the performance of their duties. *Swassing v. Baum*, 195 Neb. 651, 656, 240 N.W.2d 24, 27 (1976).

The court of appeals concluded that "[t]he ordinary meaning of 'professional negligence' and 'professional services' is thus not 'so vague and indefinite as really to be no rule or standard at all' and the statute cannot be said to be unconstitutional and void on its face." *Horn* at 256. The court of appeals affirmed the order of the district court sustaining the defendants' motions to dismiss, because "the statute was not shown to have been unconstitutionally applied to the architectural and engineering services involved in this case . . . ." *Id.*

The 10-year period of repose, also found in § 25-222 but not relevant to this appeal, was challenged on constitutional grounds as well. In *Colton v. Dewey*, 212 Neb. 126, 321 N.W.2d 913 (1982), the 10-year period of repose was upheld as applied to a physician against challenges that it constituted unconstitutional special legislation, that the 10-year period violated the equal protection clause of the U.S. Constitution and due process clause of the Nebraska Constitution, and that it violated the open courts requirement of Neb. Const. art. I, § 13. The enactment of the 10-year period of repose was held to be a valid exercise of legislative power.

Two subsequent cases then followed *Colton v. Dewey, supra.* In *Smith v. Dewey*, 214 Neb. 605, 335 N.W.2d 530 (1983), another claim that the 10-year statute of repose denied the right of access to the courts guaranteed by Neb. Const. art. I, § 13, was dismissed by reference to *Colton v. Dewey, supra.* The same claim of unconstitutionality again arose in *Williams v. Kingery Constr. Co.*, 225 Neb. 235, 404 N.W.2d 32 (1987), where we stated our adherence to *Smith v. Dewey, supra*, and *Colton v. Dewey, supra*, and thus again rejected the

constitutional challenge to the 10-year period of repose.

Thus, from all the challenges against § 25-222, the imprecise meaning of the word "professional" has only been argued twice: first, in *Taylor v. Karrer*, 196 Neb. 581, 244 N.W.2d 201 (1976), where we found that the word was not vague as applied to doctors, and second, in *Horn v. Burns and Roe*, 536 F.2d 251 (8th Cir. 1976), where the federal court of appeals found § 25-222 to not be vague as applied to engineers and architects. The legislative history supports those results.

Although Senator Luedtke said § 25-222 applied to "everybody," the legislative history cannot reasonably be understood to have intended a 2-year statute of limitations for, as examples, professional bowlers, drivers, or wrestlers. If so, we would have a 2-year period of limitations for all negligence claims resulting from one's occupation and a 4-year period of limitations for other causes of action based on negligence. There is nothing in the legislative history which suggests such a result was intended.

Neb. Const. art. II, § 1, distributes the powers of government into three separate and coequal departments or branches and prohibits one branch from exercising any power belonging to another branch. *State v. Burling*, 224 Neb. 725, 400 N.W.2d 872 (1987). Accord, *Copple v. City of Lincoln*, 210 Neb. 504, 315 N.W.2d 628 (1982); *Williams v. County of Buffalo*, 181 Neb. 233, 147 N.W.2d 776 (1967). It has been specifically noted that the Legislature may not impose upon the courts the performance of nonjudicial duties nor delegate to them any legislative power. *Nebraska P.P. Dist. v. City of York*, 212 Neb. 747, 326 N.W.2d 22 (1982); *C. R. T. Corp. v. Board of Equalization*, 172 Neb. 540, 110 N.W.2d 194 (1961).

The power of classification rests with the Legislature, not with the courts. Neb. Const. art. III, § 18; *McDonald v. Rentfrow*, 176 Neb. 796, 127 N.W.2d 480 (1964). Accord, *State v. Hunt*, 220 Neb. 707, 371 N.W.2d 708 (1985); *State ex rel. Douglas v. Marsh*, 207 Neb. 598, 300 N.W.2d 181 (1980). See, also, *School Dist. No. 46 v. City of Bellevue*, 224 Neb. 543, 400 N.W.2d 229 (1987). The Legislature's failure to adequately define the class which is to be given the benefit of a shortened period of limitations imposes upon the courts the task of

determining what there is about various occupational activities, if anything, which justifies such preferential treatment. This attempted delegation of the Legislature's classificatory power to the courts offends Neb. Const. art. II, § 1.

Experience has demonstrated that this court's initial thought that it could preserve the Legislature's effort in enacting § 25-222 by making a case-by-case analysis of the occupational activities to which the statute applies, *Taylor v. Karrer, supra*, was overambitious. It is now clear that the Legislature's failure to articulate a meaningful classificatory scheme requires the courts to do more than engage in the judicial act of applying a legislatively defined classification to a particular set of facts.

SHANAHAN and GRANT, JJ., join in this concurrence.